**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-----------------------------------------------------------------------x

**STATE FARM MUTUAL AUTOMOBILE**
**INSURANCE COMPANY,**

                   **Plaintiff,**                                        <u>OPINION AND ORDER</u>

       **-against-**                                                  **04-CV-2609**

**SEMION GRAFMAN,**
**INESSA ABRAMSHIK A/K/A**
**INESA ABRAMOVSHCHIK A/K/A INESSA RUBIN,\***
**SERGE1 KHOKHLOV,[1]**
**VLADIMIR NABUTOVSKY,\***
**ALEC PALMER,**
**OLEG PORTNOV,**
**ALEKSEY PUGACH,**
**BORIS RABINOVICH A/K/A BOB REY,**
**ANDREI SCHULTZ,\***
**ATLAS MEDICAL EQUIPMENT,**
**BETHEL EQUIPMENT, INC.,**
**GRAFMAN QUALITY PRODUCTS, INC.**
**HEALTH WORLD AI, LTD.,**
**ROSGAL, LTD.,**
**SEASIDE WHOLESALE, LTD.,**
**STAR DIAGNOSTIC CENTER, INC. D/B/A STAR MEDICAL SYSTEMS,**
**UNIQUE DISTRIBUTOR, INC.**

               **(collectively "Wholesale Defendants")**

**IGOR BERLOVICH,**
**ARKADI CHAPIRO A/K/A ARKADI SHAPIRO,**
**LYUBOV GROYSMAN,**
**EMMANUEL JACOBS,**
**JACOB KAGAN A/K/A YAKOV KAGAN,[+]**
**VICTORIA KAGAN,**
**IGOR KATS,**
**DMITRIY KAZAKOV,**
**MARGARITA KHALAVSKY,[+]**
**ROBERT KHALAVSKY,[+]**
**LARISA KLOCHKOV,**
**ARTUR KLOTSMAN,**
**EDUARD KORETSKY,[+]**

---

\* Also alleged to be "Retail Defendants."
[+] Also alleged to be "secretly owned and controlled Fraudulent PCs."

GALINA LEYKIND,
LARA A/K/A ELARYA LEYKIND A/K/A ELARYA BATKILIN,
OLEG LEYKIND,
STEVEN LEYKIND,
YACOV MOIN,
ILYA MUGERMAN,
ROMAN PERGAMENT,
ALLA SHKLYAR,
EDUARD SHKLYAR,
DEMITRY TSEPENYUK,
BOHDAR VASECHKO,
IGOR VETOUKH,
MARIYA VITUKHNOVSKAYA A/K/A MARIYA VITUKH,
SEMEN VITUKHNOVSKIY A/K/A SEMEN VITUKH,
ISAAK YAKUBOV,
AAA-RAA MEDICAL SUPPLY, INC.,
AL MEDICAL AND SURGICAL SUPPLY, INC.,
AMAZE MEDICAL SUPPLY, INC.,
ARBOV, INC.,
A TO Z MEDICAL SUPPLIES, INC.,
AYD SERVICES, INC.,
BELACHY SUPPLY, INC.,
BELFORD INSTRUMENTS AND EQUIPMENT, INC.,
CAREPLUS MEDICAL SUPPLY, INC.,
DILON MEDICAL SUPPLY, CORP.,
EDEL SURGICAL AND MEDICAL SUPPLY, INC.,
EMPIRE SUPPLY, INC.,
FAIR PRICE MEDICAL SUPPLY, CORP.,
GRAHAM MANAGEMENT GROUP, INC.,
HORIZON MANAGEMENT OF NY, INC.,
INFINITY HEALTH PRODUCTS, LTD.,
IVB MEDICAL SUPPLY, INC.,
KLM TRADING, LTD.,
MADERA MEDICAL SUPPLY, INC.,
MARA SERVICES, INC.,
MIRKA UNITED, INC.,
MODEL SUPPLY, INC.,
NORTHRIDGE SUPPLY, INC.,
TRISTATE AJA SERGICAL [SIC] SUPPLY, INC.
VISTA SURGICAL SUPPLIES, INC.,
YAD TRADING & SERVICES, INC.,

(collectively "Retail Defendants")

ALBATROS MEDICAL, PC,
ALEXANDRITE MEDICAL CARE, PC,

**ALMAZ MEDICAL SERVICES, PC,**
**BERGAMO MEDICAL, PC,**
**ESHEL MEDICAL REHABILITATION, LLC,**
**MERIDIAN MEDICAL OF NY, PC,**
**MILAN MEDICAL, PC,**
**PALERMO MEDICAL, PC**
**REFUAH MEDICAL REHABILITATION, LLC,**

           **(collectively the "Fraudulently Incorporated PCs")**

**GERMAN LAUFER,**
**ELEANOR LIPOVSKY,**
**ZOYA MAKSUMOVA,**
**LEE CRAIG NAGOURNEY**
**DOUGLAS J. SPIEL AND**
**LILIYA YANOVSKAYA,**

           **(collectively the "Paper Owner Defendants")**

           **Defendants.**

-------------------------------------------------------------------------x

**GERSHON, United States District Judge:**

On June 4, 2007, plaintiff State Farm Mutual Automobile Insurance Company ("State Farm") filed an Amended Complaint alleging that numerous defendants participated in a scheme to abuse New York's No-Fault insurance laws by improperly collecting reimbursement for medical treatment, tests and durable medical equipment. Plaintiff alleges that certain defendants were fraudulently incorporated in violation of New York law and are not entitled to payment from plaintiff. Plaintiff also alleges that certain defendants made insurance claims at artificially inflated prices or sought payment for items or services that were not medically necessary or, in some cases, were never provided or performed. Plaintiff asserts claims under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961 et seq., and claims for New York common law fraud and unjust enrichment.

Defendants German Laufer and Milan Medical P.C., (collectively, the "Laufer defendants"), against whom plaintiff asserts claims for fraud and unjust enrichment, have filed a motion for judgment on the pleadings. Defendants Arthur Klotsman, Yacov Moin, Demitry Tspenyuk, A to Z Medical Supplies, Inc., AYD Services, Inc., YAD Trading & Services Inc. and KLM Trading LLD, (collectively, the "Klotsman defendants"), against whom plaintiff asserts claims of common law fraud and RICO violations, have filed a motion to dismiss the Amended Complaint. Defendant Jacob Kagan, against whom plaintiff asserts claims of common law fraud, unjust enrichment and RICO violations, has filed a motion for judgment on the pleadings.

## Factual Allegations

Plaintiff is an insurance company and, under New York's No-Fault insurance laws, is required to reimburse individuals eligible for benefits under polices issued by plaintiff ("Insureds") for necessary medical equipment and other services required as a result of an automobile accident. See N.Y. Ins. Law § 5106. Insureds, in turn, may assign their rights to these benefits to medical providers in order to reimburse the providers for the necessary equipment and/or services. Medical providers may then submit requests for payment directly to plaintiff.

Pursuant to New York's insurance regulations, these medical providers of durable medical equipment or other necessary medical equipment ("Supplies") are entitled to certain minimum payments (including profit) for Supplies provided to Insureds. Specifically, prior to October 4, 2004, a provider of Supplies was reimbursed up to 150% of its documented costs for Supplies or 155% of the Medicaid fee schedule for orthotics, and, since October 6, 2004, a provider has been entitled to the maximum permissible charge under the state Medicaid program.

Plaintiff alleges that defendants fraudulently abused the No-Fault system in two ways: first, certain defendants falsely represented that medical providers were properly licensed, owned and operated by medical doctors, as required by New York law, and were entitled to payments from plaintiff under the No-Fault laws. Second, certain defendants exploited the No-Fault reimbursement scheme by submitting false invoices to plaintiff for Supplies that were never provided to Insureds or which artificially inflated the prices actually paid by defendants for Supplies.

As described below, the Amended Complaint alleges that the fraudulent scheme was carried out between four groups of defendants: (i) Wholesalers; (ii) Retailers; (iii) Fraudulently Incorporated PCs; and (iv) Paper Owners.

First, certain layperson defendants induced licensed doctors (the so-called "Paper Owners", including moving defendant Dr. German Laufer) to open medical clinics which a non-doctor (including moving defendant Jacob Kagan) secretly owned and controlled. Plaintiff alleges that the clinics established consulting and management arrangements permitting the controlling non-medical personnel to dictate the medical and billing practices of the clinics and to provide for the siphoning of profits to laypersons. Under this scheme, defendants defrauded plaintiff because the clinics were not owned and controlled by doctors, as required by New York law, and, therefore, were not entitled to any reimbursement for services and Supplies provided.

In addition to these fraudulent incorporation allegations, plaintiff alleges that Wholesalers provided Retailers (including the moving Klotsman defendants as well as entities controlled by defendant Kagan) with Supplies at artificially inflated prices, accompanied by invoices reflecting those inflated prices, and Retailers, in turn, submitted those false invoices to plaintiff for

reimbursement, supported by "boilerplate prescription forms and letters of medical necessity" from medical clinics.  (Am. Compl. ¶ 17.)  According to plaintiff, the documentation provided to plaintiff by the Retailer defendants was fraudulent in numerous respects, including:  (i) deliberate omission of, or inclusion of fraudulent, information on the invoices in order to "conceal from State Farm the true kind and quality of the items that were provided to the Insureds"; (ii) repeatedly submitting a single invoice to support "charges for items purportedly provided to numerous Insureds"; (iii) submitting invoices requesting reimbursement for Supplies at "grossly inflated" prices; and (iv) submitting invoices which listed Supplies "not actually provided or . . . provided but not prescribed."  (Id. ¶¶ 21-23.)

Plaintiff also alleges that, in furtherance of the scheme, Retailer defendants issued checks to Wholesaler defendants reflecting payment for Supplies at the inflated prices, and Retailer defendants then used those checks to demonstrate to State Farm the prices they purported to have paid for Supplies.  However, Wholesalers would cash the checks from Retailer defendants and then pay secret kickbacks to the Retailers to offset the inflated charges.  According to plaintiff, defendants engaged in a "pay to play" system under which Retailers would only use wholesalers that agreed to pay these "secret cash kickbacks."  (Id. ¶¶ 16, 19.)

By example, plaintiff explains that a defendant retailer could provide plaintiff with a fraudulent invoice stating that $75 was paid by the retailer for a massager, a common item of durable of medical equipment.  However, as alleged in Exhibit Five to the Amended Complaint, a retailer paid only $8 to $10 for a massager, nearly ten times less than the defendant retailer would indicate to plaintiff.  Upon receipt of documentation that the massager cost $75, plaintiff then paid the defendant retailer $112.50 (as calculated under the insurance regulations, discussed

supra) and the retailer and/or wholesaler made a profit of $104.50—thirteen times the purchase price—for an eight dollar massager.

Secret layperson control of medical providers facilitated this scheme to defraud by permitting a layperson to control the creation and submission, through the mails, of fraudulent medical reports, prescriptions and invoices for medical services and supplies used in support of numerous No-Fault insurance claims.

Finally, according to plaintiff, defendants used particular check cashers in order to (i) disguise checks written by defendants to non-existent or shell entities as business expenses; and (ii) secretly cash checks which provided monies to "induce the Clinics to manufacture and steer prescriptions for the Supplies to the Retail Defendants." (Id. ¶ 28.)

Specifically, as to the moving defendants, the claims are as follows:

**Laufer Defendants (Dr. Laufer and Milan Medical P.C.)**

Plaintiff alleges defendant Dr. German Laufer filed a false certificate of incorporation with New York State's Department of Education for defendant Milan Medical P.C. ("Milan") at the prompting of defendant Kagan. Plaintiff alleges that, contrary to Laufer's representation on the certificate, Laufer never had "any real ownership in or control" over Milan, rather "[t]rue ownership and control . . . always rested with Kagan" (and other non-moving defendants) who used

> the façade of the Fraudulently Incorporated PCs to do indirectly what they are forbidden from doing directly, namely employing physicians and other licensed health care professionals, controlling their practices, and charging for and deriving an economic benefit from their services, including the issuance of prescriptions for Supplies to facilitate fraudulent charges by the Retailer Defendants.

(Am. Compl. ¶ 39.) Plaintiff asserts that Laufer's misrepresentations aided the fraud against plaintiff by permitting Kagan to control a medical clinic, which, when combined with Kagan's ownership of certain defendant Wholesalers and Retailers, facilitated the collection of fraudulent charges. Plaintiff also argues that, because Milan was fraudulently incorporated, it "never had any right to receive No-Fault Benefits for any professional services." (Id. ¶ 41.)

Based upon the facts alleged, plaintiff seeks damages from the Laufer defendants for common law fraud and unjust enrichment in the amount of more than one million dollars. Plaintiff also seeks a declaratory judgment "declaring that . . . Milan [is] not entitled to collect No-Fault Benefits for any charges which [it] ha[s] submitted to State Farm which have not been paid." (Id. ¶ 545.)

**Klotsman Defendants**

Plaintiff alleges that the Klotsman defendants are Retailer Defendants. Specifically, plaintiff contends that Arthur Klotsman, Yavoc Moin and Demitry Tsepenyuk owned and operated AYD Services, YAD Trading and KLM Trading. Plaintiff further alleges that Klotsman owned and operated A to Z Medical. Plaintiff alleges that numerous fraudulent charges were submitted to plaintiff, as discussed supra, by Retailers AYD Services, YAD Trading, KLM Trading and A to Z Medical.

Based upon the facts alleged, plaintiff seeks damages from the Klotsman Defendants for violations of RICO and for common law fraud.

**Defendant Kagan**

Plaintiff alleges that defendant Jacob Kagan owned and controlled various Retailer Defendants, and also secretly, and improperly, owned, operated and controlled medical services providers that were fraudulently incorporated.[2] Plaintiff alleges Kagan, through his illegal control of medical service providers and control of certain Retailers, evidenced by management and consulting fee arrangements, steered the creation of false paperwork necessary for submission of fraudulent invoices to plaintiff for reimbursement. Plaintiff also alleges that Kagan received secret cash kickbacks from Wholesalers for purchases of Supplies at inflated prices.

Based upon the facts alleged, plaintiff seeks damages from defendant Kagan for multiple violations of the RICO laws with respect to alleged enterprises involving the following Retailer defendants: (i) Mara and Mirka, (ii) Graham and Horizon (iii) Northridge and Madera; and (iv) Arbov. Plaintiff also seeks damages from Kagan on two claims of common law fraud and one claim of unjust enrichment.

## Discussion

The Klotsman defendants move to dismiss the Amended Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. The Laufer defendants and defendant Kagan move to dismiss the Amended Complaint pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. The standard for addressing a Rule 12(c) motion for judgment on the pleadings is identical to a Rule 12(b)(6) motion to dismiss. See Goldstein v. Pataki, 516 F.3d 50, 56 (2d Cir. 2008). On a motion to dismiss pursuant to Rule 12(b)(6), the court accepts as true all well-

---

[2] Plaintiff alleges that Kagan "[a]t all relevant times . . . has been the owner and operator of [Retailer Defendant] Mirka, participated in the operation of [Retailer Defendants] Graham, Horizon, and Northridge, and secretly owned [Retail Defendant] Mara, [and Fraudulently Incorporated Medical Providers] Meridian, Milan, Eshel, Refuah and Bergamo and controlled every aspect of their activities." (Am. Compl. ¶ 154.)

pleaded factual allegations and draws all inferences in the plaintiff's favor.  See Cleveland v. Caplow Enters., 448 F.3d 518, 521 (2d Cir. 2006).  A complaint should be dismissed only if it fails to set forth sufficient allegations of fact to state a claim for relief that is "plausible on its face."  Ashcroft v. Iqbal, 129 S.Ct. 1937, 1950 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007).

**Fraud Claim Against the Laufer Defendants**

The Laufer defendants argue that plaintiff's claim of common law fraud, based on the fraudulent incorporation of Milan, must be dismissed, pursuant to Rules 9(b) and 12(c) of the Federal Rules of Civil Procedure.

Under New York law, a plaintiff alleging fraud must state five elements:  (i) a material misrepresentation; (ii) made by a defendant knowing that it was false when made; (iii) with the intent to defraud; (iv) upon which plaintiff reasonably relies; and (v) which causes plaintiff injury.  See Wynn v. AC Rochester, 273 F.3d 153, 156 (2d Cir. 2001) (citing Lama Holding Co. v. Smith Barney, Inc., 88 N.Y.2d 413, 421 (1996)).

In State Farm Mutual Automobile Insurance Co. v. Mallela, 4 N.Y.3d 313 (2005), the New York Court of Appeals answered in the affirmative the following question certified by the Court of Appeals for the Second Circuit:  whether insurance carriers may withhold payment for medical services provided by fraudulently incorporated enterprises to which plaintiffs have assigned claims.  See id. at 319; see also State Farm Mut. Auto Ins. Co. v. Mallela, 372 F.3d 500 (2d Cir. 2004).  Defendants had argued, in part, that permitting insurers to withhold such payments would conflict "with the prompt payment goals" of the No-Fault laws, which require an insurer to pay a No-Fault claim from a medical provider within 30 days of a request, N.Y. Ins.

Law § 5106(a) (the "Thirty-Day Rule"). The New York Court of Appeals first highlighted that New York's Superintendant of Insurance promulgated N.Y.C.R.R. § 65-3.16(a)(12), effective April 4, 2002, and interpreted that revised regulation to exclude from reimbursable parties those providers which were unlicensed or fraudulently licensed, including medical providers owned or controlled by persons who are not licensed physicians, in violation of New York law. See Mallela, 4 N.Y.3d at 320. The Court then rejected the defendant's argument, holding that the interest in withholding payment for fraud did not conflict with the interest in prompt payment of claims. Id. at 321. Notably, the Court remarked that the plaintiff "never alleged that the actual care received by patients was unnecessary or improper"; rather, the complaint "center[ed] on fraud in the corporate form." Id. at 320. Finally, Mallela implicitly held that an insurer could bring an action for fraud or unjust enrichment, based on fraudulent incorporation, to recover payments already made to fraudulently incorporated providers, so long as the payments were made after April 4, 2002, the effective date of the regulation. See Metroscan Imaging, P.C. v. Geico Ins. Co., 13 Misc.3d 35, 40 (N.Y., 2d Dept. 2006); see also State Farm Mut. Auto. Ins. Co. v. CPT Med. Svcs., P.C., No. 04-CV-5045, 2008 WL 4146190, at *8-*9 (E.D.N.Y. Sep. 5, 2008).

Here, plaintiff properly alleges a claim of common law fraud, as contemplated by Mallela. Plaintiff alleges that the Laufer defendants knowingly made a material misrepresentation that Milan was properly incorporated by a medical doctor and entitled to payment from plaintiff, when, in fact, it was not, with the intention that plaintiff would reimburse the Laufer defendants. Plaintiff allegedly relied on this representation and such reliance caused "damages of more than $1,000,000." Insofar as the claim against the Laufer defendants is limited to fraudulent incorporation, no further specification is required.

The Laufer defendants' argument that plaintiff be required to detail the injury suffered, including "the nature of the claims in question, by date of service, claim number, or even patient name" is wrong. The damages which stem from the alleged fraudulent misrepresentation that the Laufer defendants were properly incorporated, and entitled to reimbursement, need not be set forth in such an exacting form at this early stage, In re Credit Suisse First Boston Corporation Securities Litigation, No. 97-CV-4760, 1998 WL 734365, at *12 (S.D.N.Y. Oct. 20, 1998); rather, it is adequate that plaintiff alleges it has incurred "damages of more than $1,000,000" from reliance on "false or fraudulent misrepresentations" of the Laufer defendants. See State Farm Mut. Auto. Ins. Co. v. Liguori, 589 F. Supp. 2d 221, 238 (E.D.N.Y. 2008) (citing Presbyterian Hosp. v. Md. Cas. Co., 90 N.Y.2d 274 (1997)); AIU Ins. Co. v. Olmecs Med. Supply, Inc., No. 04-CV-2934, 2005 WL 3710370, at *14 (E.D.N.Y. Feb. 22, 2005). Further, as in Mallela, plaintiff is not required to allege that the Laufer defendants failed to provide proper care to individual patients; plaintiff's claim may focus on a fraud "in the corporate form." Mallela, 4 N.Y.3d at 322.

Next, the Laufer defendants argue that plaintiff's fraud claim must fail because plaintiff's allegation that Milan's profits were improperly "siphoned" to laypersons is insufficient to support plaintiff's allegation that Milan was controlled by a layperson and, therefore, fraudulently incorporated under the New York No-Fault laws. To the contrary, the allegations that defendants siphoned monies, and collected kickbacks, from Milan, especially when viewed in light of the detailed description of how and why Milan was fraudulently incorporated, are

sufficient to survive a motion to dismiss.[3] See CPT Medical Services, P.C., 2008 WL 4146190 at *3, *11, *15-*16.

**Unjust Enrichment Claim Against the Laufer Defendants**

Plaintiff also sufficiently alleges a claim of unjust enrichment against the Laufer defendants. Unjust enrichment is an equitable principle, "an obligation which the law creates, in the absence of any agreement, when and because acts of the parties or others have placed in the possession of one person money . . . under such circumstances that in equity and good conscience he ought not to retain it." Mfrs. Hanover Trust Co. v. Chem. Bank, 160 A.D.2d 113, 117 (N.Y., 1st Dept. 1990). "To prevail on a claim for unjust enrichment in New York, a plaintiff must establish (1) that the defendant benefitted; (2) at the plaintiff's expense; and (3) that equity and good conscience require restitution." Kaye v. Grossman , 202 F.3d 611, 616 (2d Cir. 2000) (internal quotations omitted). The benefit to the defendant is not limited to monies, and can be either a direct or an indirect benefit. See MDO Dev. Corp v. Kelly, 726 F. Supp. 79, 85 (S.D.N.Y. 1989); Blue Cross of Cent. N.Y. v. Wheeler, 93 A.D.2d 995, 996 (N.Y., 4th Dept. 1983).[4]

The Laufer defendants contend that plaintiff has failed to state a claim for unjust enrichment because it has alleged no injury independent of a violation of the incorporation requirements set forth in section 1503 of New York's Business Corporations Law. As described

---

[3] Further, the Laufer defendants' heavy reliance on AIU Ins. Co. v. Deajess Medical Imaging P.C., 2/10/2006 N.Y.L.J. 22 (col. 1), is misplaced. In that case the New York Appellate Term refused only to grant a preliminary injunction on the insurer's allegations of "siphoning"; however, the court denied the defendant's motion to dismiss the complaint and permitted the case to proceed.

[4] The heightened pleading standard set forth in Rule 9(b) of the Federal Rules of Civil Procedure does not apply to an unjust enrichment claim. Zucker v. Katz, 708 F. Supp. 525, 530 (S.D.N.Y. 1989).

above, the Laufer defendants ignore that, under <u>Mallela</u> and New York law, plaintiff is not required to pay monies to an improperly licensed P.C. In addition, plaintiff is entitled to recoup such monies through an affirmative unjust enrichment cause of action. Since plaintiff has adequately pleaded that the defendant unfairly benefitted from fraudulent misrepresentations, defendants' motion to dismiss the unjust enrichment claim is denied.

**Request for a Declaratory Judgment Against the Laufer Defendants**

Finally, the Laufer defendants contend that plaintiff's request for a declaratory judgment stating that Milan is "not entitled to collect No-Fault Benefits for any charges which they have submitted to State Farm which have not been paid" must be dismissed because plaintiff has not pleaded a controversy of sufficient immediacy and reality to warrant the issuance of such a judgment.

To state a claim for a declaratory judgment, plaintiff must allege that there is "a substantial controversy, between the parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." <u>Niagara Mohawk Power Corp. v. Tonawanda Band of Seneca Indians</u>, 94 F.3d 747, 752 (2d Cir. 1996). Here, plaintiff has sufficiently alleged that there is a substantial controversy concerning whether plaintiff is required to make payment to Milan to satisfy invoices which plaintiff contends were fraudulent. Accordingly, the Laufer defendants' motion to dismiss plaintiff's claim for a declaratory judgment against Milan is denied.

**Fraud Claims Against Kagan and the Klotsman Defendants Based Upon Fraudulently Inflated Invoices**

Defendant Kagan and the Klotsman defendants argue that the claims based upon fraudulently inflated, or otherwise fraudulent, invoices should be dismissed as precluded by the

requirement, under Section 5106(a) of New York's Insurance Law, that an insurer pay a claim from a medical provider within thirty days. This prompt payment law provides that, "[i]f an insurer fails to pay or deny a claim within this thirty day period, the insurer waives its right to almost all <u>defenses</u> it would otherwise have to paying the claim, including billing fraud based on lack of medical necessity or excessive fees." <u>Liguori</u>, 589 F. Supp. 2d at 229 (emphasis added). Defendant Kagan and the Klotsman defendants argue that State Farm is barred from seeking damages for "claims already paid or claims that are due" pursuant to the thirty day rule. Although the New York Court of Appeals has not addressed whether Section 5106(a) precludes insurers from bringing affirmative actions based upon fraudulent invoicing schemes by medical providers, its decision in <u>Mallela</u>, discussed above, which held that fraudulently licensed corporations are ineligible for reimbursement, also recognized implicitly the availability of affirmative claims for fraud and unjust enrichment based upon fraudulent incorporation. In doing so, the Court rejected the simplistic arguments made by defendants that the prompt payment goals underlying the Thirty-Day Rule overcome another important state policy, the elimination of fraud in the No-Fault regime.

Numerous judges have found that affirmative recovery claims based upon fraudulent invoicing are not barred by Section 5106(a). For example, Justice Gammerman of the New York Supreme Court held that Section 5106 does not bar subsequent actions by an insurer for the recovery of fraudulently obtained benefits where such actions are authorized by any other statute or under common law. <u>See</u> <u>Progressive Ne. Co. v. Adv. Diagnostic and Treatment Med. P.C.</u>, 229 N.Y.L.J. 18 col. 2 (Sup. Ct., N.Y. County, Aug. 2, 2001). He noted that Section 5106 "would not appear to apply where, as here, the insurer has already paid those benefits and discovers fraud on the part of a health care provider, who has submitted fraudulent claims." <u>Id.</u>

Justice Gammerman noted the absence of any statutory language suggesting that affirmative fraud claims were precluded and relied upon a letter opinion from the New York State Department of Insurance, dated November 29, 2000, to which he gave deference, stating that Section 5106 "is in no way intended and should not serve as a bar to subsequent actions by an insurer for the recovery of fraudulently obtained benefits from a claimant, where such action is authorized under the auspices of any other statute or under common law." Id. (citing N.Y. Dept. of Ins. Gen. Couns. Op. Ltr., at 2 (November 29, 2000)). Similar analyses were used by various judges of this court in reaching the same conclusion. See, e.g., Liguori, 589 F. Supp. 2d at 238 (Bianco, J.); CPT Med. Svcs., P.C., 2008 WL 4146190, at *8; Allstate Ins. Co. v. Valley Physical Med. & Rehab., 555 F. Supp. 2d 335, 339 (E.D.N.Y. 2008) (Hurley, J.); State Farm Mut. Auto. Ins. Co. v. Kalika, M.D., No. 04-CV-4631, 2006 WL 6176152, at *5 (E.D.N.Y. Mar. 16, 2006) (Report and Recommendation of Pollack, M.J.), adopted at Kalika, No. 04-CV-4631, slip op. at 1 (E.D.N.Y. Mar. 31, 2006) (Amon, J.); see also, e.g., Allstate Ins. Co. v. Belt Parkway Imaging P.C., 11 Misc.3d 810, 813 (N.Y. Sup. Ct. 2006) (Moskowitz, J.). In this very case, Magistrate Judge Gold reached the same conclusion in granting plaintiff's motion for leave to amend the Complaint. See State Farm Mut. Auto. Ins. Co. v. Grafman, No. 04-CV-2609, slip op. at 8 (E.D.N.Y. May 22, 2007) (Gold, M.J.).

As Magistrate Judge Pollack reasoned in Kalika,

> [t]he policy of ensuring prompt payment or denial of claims in exchange for a reduction in the number of litigation claims filed, [which underlies the thirty-day rule], is not served by allowing fraudulent schemes to be perpetrated without recourse to the insurer seeking reimbursement for claims wrongly paid as a result of fraud and deceit. . . . [O]ften the nature of the fraud is such that it is not easily discovered within [the thirty day] period of time. Indeed, the New York Legislature, in providing a six year statute of limitations for fraud actions, has recognized the difficulty often encountered in unearthing a fraudulent scheme.

2006 WL 6176152, at *5.  And, as Magistrate Judge Gold stated, "[p]recluding affirmative fraud claims would undoubtedly result in the public paying higher premiums while individuals who engaged in fraudulent, criminal activity reaped the rewards."  <u>Grafman</u>, No. 04-CV-2609, slip op. at 23.  In the absence of any statutory support for such a result, I join those judges who have rejected the argument that Section 5106(a) bars affirmative claims based upon fraudulent invoices.

**RICO Claims Against Kagan and the Klotsman Defendants**

Defendant Kagan and the Klotsman defendants argue that State Farm's RICO claims must be dismissed because New York's No-Fault regime preempts the application of the RICO laws.  These defendants also argue that the RICO claims are time-barred.  Finally, these defendants argue that plaintiff's pleadings concerning the RICO violations are defective because plaintiff has failed to properly allege:  (i) "racketeering activity"; (ii) that defendants proximately caused plaintiff's injury; (iii) detrimental reliance on fraudulent representations; and (iv) that the "enterprise" affected interstate commerce.  These arguments are addressed in turn.

<u>Preemption</u>

The McCarran-Ferguson Act, 15 U.S.C. §§ 1011-1015, is meant to protect an individual state from inadvertent federal intrusion into the state's sovereign right to regulate the business of insurance within its borders.  <u>See</u> <u>Barnett Bank v. Nelson</u>, 517 U.S. 25, 39 (1996).  Under McCarran-Ferguson, a federal statute is preempted if (i) the statute does not relate specifically to insurance; (ii) the acts challenged under the statute constitute the "business of insurance"; (iii) the state has enacted laws which regulate the challenged acts; and (iv) the state laws would be

"invalidate[d], impaired or supersede[d]" by application of the federal statute.  See Humana, Inc. v. Forsyth, 525 U.S. 299, 307-08 (1999).

Plaintiff does not dispute that its RICO claims meet prongs one and three; that is, RICO does not relate specifically to insurance, and New York has enacted laws which regulate the challenged acts.  Plaintiff argues that its claims are not preempted because "fraudulent submission of charges" does not constitute the "business of insurance" and application of RICO does not "invalidate, impair or supersede" New York state insurance law.

In Humana, the United States Supreme Court addressed the latter argument and held, after considering the relationship between the insurance laws of Nevada, RICO actions and the McCarran-Ferguson Act, that

> RICO c[ould] be applied in . . . harmony with the State's [insurance] regulation.  When federal law is applied in aid or enhancement of state regulation, and does not frustrate any declared state policy or disturb the State's administrative regime, the McCarran-Ferguson Act does not bar the federal action.

525 U.S. at 303.  Here, State Farm's RICO claims supplement, rather than disturb, New York's insurance regime by "providing another vehicle by which to carry forth the substantive policies" of the State of New York.  Dornberger v. Metro. Life Ins. Co., 961 F. Supp. 506, 515-521 (S.D.N.Y. 1997) (Sand, J.); see also Rotella v. Wood, 528 U.S. 549, 557 (2000) (noting that the objective of RICO is to encourage "civil litigation to supplement Government efforts to deter and penalize the respectively prohibited practices"); CPT Med. Svcs., 2008 4146190 at *6.

Accordingly, defendant Kagan's and the Klotsman defendants' motion to dismiss plaintiff's RICO claims on the basis of preemption is denied.[5]

Statute of Limitations

Defendant Kagan and the Klotsman defendants contend that the acts challenged under RICO "relate back to 1999" and, therefore, plaintiff's RICO claims are barred by the applicable four-year statute of limitations. Plaintiff argues that defendants' statute of limitations defense raises factual questions not appropriate for resolution on a motion to dismiss.

RICO claims are governed by a four-year statute of limitations which "begins to run when the plaintiff discovers or should have discovered the RICO injury." In re Merrill Lynch Ltd. P'ships Litig., 154 F.3d 56, 58 (2d Cir. 1998). In this Circuit, civil RICO actions are subject to a "separate accrual rule"; that is, "a new claim accrues, triggering a new four-year limitations period each time plaintiff discovers, or should have discovered an injury caused by the predicate RICO violations."[6] Bingham v. Zolt, 66 F.3d 553, 560 (2d Cir. 1995).

"The first step in the statute of limitations analysis is to determine when the [plaintiffs] sustained the alleged injury for which they seek redress." Merrill Lynch, 154 F.3d at 59. Here, the Amended Complaint alleges that defendants caused injury to plaintiff by inducing plaintiff to make payments (i) to fraudulently incorporated medical companies, which plaintiff claims were

_____

[5] Because I find that New York state law would not be invalidated, impaired or superseded by the application of the RICO laws, I do not address the parties' dispute over whether the challenged acts constitute the "business of insurance" or, rather, the "business of fraud."

[6] Therefore, under defendants' argument, even if some claims would be barred, pursuant to the separate accrual rule the complaint would not be dismissed in its entirety. Instead, plaintiff would be entitled to recover for any injuries suffered four years prior to the filing of the Amended Complaint.

not entitled to any payments; and/or (ii) for claims for reimbursement at fraudulently inflated prices or for supplies that were never prescribed for, or provided to, Insureds. According to the Amended Complaint, the alleged scheme began in 1999 and ran through 2007.[7] Each payment induced by the scheme alleged by plaintiff constitutes a separate injury occurring on the date the payment was made. See Valley Physical Med. & Rehab., 475 F. Supp. 2d at 229 (E.D.N.Y. 2007), rev'd on other grounds, 555 F. Supp. 2d 335 (E.D.N.Y. 2008).

Next, the court is required to determine when plaintiff "discovered or should have discovered th[e] injury." Bankers Trust Co. v. Rhoades, 859 F.2d 1103 (2d Cir. 1988). The limitations period does not necessarily run on the date of the injury but, rather, when the plaintiff has "actual or inquiry notice of the injury." Id. A RICO claim as to a particular injury will accrue for limitation purposes when there "are circumstances sufficient to alert a reasonable person that he or she had been defrauded." Congregacion de la Mision Provincia de Venezuela v. Curi, 978 F. Supp. 435, 444 (E.D.N.Y. 1997).

Here, plaintiff argues defendants' scheme was premised on secrecy and that, when the record is developed, plaintiff will "establish that it could not and did not discover [d]efendants' fraud until well within the limitations period."

In light of plaintiff's allegations, it is plausible that plaintiff could not discover defendants' fraudulent scheme, or the scope of the involvement of particular defendants, until sometime after the actual injury occurred. See Allstate Ins. Co. v. Ahmed Halima, M.D., No. 06-CV-1316, 2009 WL 750199 (E.D.N.Y. Mar. 19, 2009). As Magistrate Judge Gold stated, in granting plaintiff leave to amend the original Complaint, the court could not yet answer the "fact-

---

[7] It appears that plaintiff, at least with respect to the Laufer defendants, seeks only to recover those monies paid to defendants after April 4, 2002. (Am. Compl. ¶ 3.)

sensitive questions" surrounding whether the allegations in the proposed Amended Complaint related back to the original complaint, whether equitable tolling applies or whether plaintiff discovered, or should have discovered, particular injuries.[8] See Grafman, No. 04-CV-2609, slip op. at *24; see also State Farm Mut. Auto Ins. Co. v. Accurate Medical, P.C., No. 07-CV-0051, 2007 WL 2908205, at *2 (E.D.N.Y. Oct. 4, 2007) ("[D]efendants' argument that plaintiff's claims . . . are barred by the statute of limitations necessarily assumes facts that are beyond the pleadings and that have yet to be developed."); see also Valley Physical, 475 F. Supp. 2d at 232.

Accordingly, on this motion to dismiss, there is insufficient information to determine whether, as a matter of law, plaintiff "knew or should have known" of the injury from defendants' alleged scheme within the limitations period. Therefore, defendants' argument that plaintiff's RICO claims are untimely is rejected as premature.

Sufficiency of the RICO Allegations

The RICO statute, 18 U.S.C. § 1962(c), makes it "unlawful for any person engaged in . . . interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity . . . ." To plead a RICO violation, a plaintiff must allege: "(1) that the defendant (2) through the commission of two or more acts (3) constituting a 'pattern' (4) of 'racketeering activity' (5) directly or indirectly invests in, or participates in (6) an 'enterprise' (7) the activities of which affect interstate or foreign commerce." Moss v. Morgan Stanley Inc., 719 F.2d 5, 17 (2d Cir. 1983). It is also unlawful for "any person to conspire to violate any provisions" of the RICO statute. See 18

---

[8] In any event, the RICO claims against Kagan and the Klotsman defendants will not be barred in their entirety because, even absent tolling or relation back, State Farm may seek recovery for RICO violations causing injury after October 6, 2002, or four years prior to the filing of the Amended Complaint.

U.S.C. § 1962(d). Where a RICO violation is predicated on fraud, Rule 9(b) of the Federal Rules of Civil Procedure must also be satisfied.

*Racketeering Activity*

The Klotsman defendants argue that plaintiff's RICO claims are deficient because it has failed to "allege[] the requisite racketeering activity with sufficient specificity."

"Racketeering activity" is defined to include mail fraud, 18 U.S.C. § 1341.[9] See 18 U.S.C. § 1961(1). To properly allege mail fraud, which is the basis for the alleged predicate acts in this case, and therefore, racketeering activity, plaintiff must set forth three elements. First, plaintiff must allege "the existence of a scheme to defraud involving money or property"—in other words, "a plan to deprive a person of something of value by trick, deceit, chicane or overreaching." CPT Med. Svcs., 2008 WL 4146190, at *11; Olmecs, 2005 WL 3710370, at *10.

Second, plaintiff must allege that defendants used the mails in furtherance of the scheme, which may be demonstrated by showing "(1) that the defendants caused the mailing . . ., namely that they acted with knowledge that the use of the mails will follow in the ordinary conduct of business, or where such use can be reasonably be foreseen even though not actually intended, and (2) that the mailing . . . was for the purpose of executing the scheme or, in other words, incidental to an essential part of the scheme." CPT Med. Svcs., 2008 WL 4146190, at *11; Olmecs, 2005 WL 3710370, at *10.

Third, plaintiff must allege "a specific intent to defraud, either by devising, participating in, or abetting the scheme." CPT Med. Svcs., 2008 WL 4146190, at *11. A "strong inference of

---

[9] A "pattern of racketeering activity" requires "at least two predicate acts of racketeering activity" committed within a ten-year period. Id. § 1961(5).

fraudulent intent" may be established by alleging that defendants had motive and opportunity to commit fraud, or, by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness. Powers v. British Vita, P.L.C., 57 F.3d 176, 184 (2d Cir. 1995); Repub. of Colombia v. Diageo N. Am., 531 F. Supp. 2d 365, 447 (E.D.N.Y. 2007).

As for specificity, while Rule 9(b) of the Federal Rules of Civil Procedure generally calls for the specific statements plaintiff claims were false or misleading, Moore v. PaineWebber, Inc., 189 F.3d 165, 172-73 (2d Cir. 1999), "in a complex civil RICO action involving multiple defendants, Rule 9(b) does not require that the 'temporal or geographic particulars of each mailing be stated with particularity, but only that the 'plaintiff delineate, with adequate particularity in the body of the complaint, the specific circumstances constituting the overall fraudulent scheme." Olmecs, 2005 WL 3710370, at *11 (quoting In re Sumitomo Copper, 995 F. Supp. 451, 456 (S.D.N.Y. 1998)); see also DiVittorio v. Equidyne Extractive Indus., Inc., 822 F.2d 1242, 1247 (2d Cir. 1987) (holding that, when there are multiple defendants, Rule 9(b) requires that a plaintiff allege facts specifying each defendant's contribution to the fraud.).

Here, the Amended Complaint describes, in some detail, a complex, multi-layered scheme involving over 80 defendants who allegedly devised, facilitated and/or participated in the plan to defraud an insurance company of monies through the submission of fraudulent medical bills. Given the nature of the scheme alleged, it is clear that each moving defendant against whom a RICO claim is made either directly used the mails or could have reasonably foreseen the use of the mails to execute the alleged scheme.

Plaintiff satisfies Rule 9(b) by pleading, with sufficient detail, hundreds of statements alleged to be fraudulent. Plaintiff has identified the "speakers", that is, creators of the false

insurance claims, and has proffered an explanation as to why these speakers' statements are fraudulent. Further, plaintiff provides, in multiple exhibits to its Amended Complaint, an extensive sampling of statements alleged to be fraudulent, including dates of mailing, corresponding claim numbers, entities which submitted many of the claims, the price allegedly paid by the submitting entity and the price charged to plaintiff. Although the exhibits to the Amended Complaint list many but not all of the individual statements alleged to be fraudulent, "Rule 9(b) does not require that each specific misrepresentation be identified where an ongoing fraudulent scheme is alleged"; rather, "the purpose of Rule 9(b) is to give defendants fair notice of the fraud alleged against them." Liguori, 589 F. Supp. 2d at 237.

In Sterling National Bank v. A-1 Hotels International, Inc., Judge Lynch considered an alleged scheme, in violation of RICO laws, where defendants submitted to plaintiff "in excess of two hundred . . . fraudulent and unauthorized charges." No. 00-CV-7352, 2001 WL 282687, at *3, *12 (S.D.N.Y. Mar. 22, 2001). Although the Sterling National Complaint alleged over two hundred fraudulent statements, it provided only "nine specific examples" to demonstrate the pattern of fraud and then alleged the participation of each member in that scheme. Id. at *3. Similarly, here, plaintiff has alleged, in great detail, the fraudulent conduct, replete with examples of fraudulent statements, explanations for why the statements were fraudulent and the identity of the particular fraudulent statements provided. Further, plaintiff has alleged each defendant's, including the Klotsman defendants', role in those statements. When plaintiff's detailed examples are "viewed in conjunction with the conduct described in the complaint (i.e., how defendants routinely submit[ted] claims for unnecessary, expensive cervical collars . . .), the specific fraud is evident." Olmecs, 2005 WL 3710370, at *12; see also Grafman, No. 04-CV-2609, slip op. at 12 (Gold, M.J.).

Finally, the Amended Complaint sets forth facts supporting a strong inference of fraudulent intent. Accepting plaintiff's allegations as true for the purposes of this motion, plaintiff's allegations that the Klotsman defendants repeatedly sought reimbursement for medical treatment, tests and durable medical equipment at artificially high prices or for equipment or tests that were not medically necessary or, in some cases, never performed at all, shows intentional misbehavior.

Accordingly, the Klotsman defendants' contention that plaintiff has not properly alleged "racketeering activity" is without merit.

*Proximate Causation*

A plaintiff can succeed on a RICO claim only if it is injured "by reason of" a defendant's racketeering activity. 18 U.S.C. § 1964(c). In the RICO context, proximate cause requires that there be some direct relation between the injury asserted and the injurious conduct alleged. See Anza v. Ideal Steel Supply Corp., 547 U.S. 451, 461 (2006).

Defendant Kagan and the Klotsman defendants argue that plaintiff's RICO claims must fail because plaintiff cannot show that the alleged scheme was the proximate cause of plaintiff's losses. Specifically, these defendants contend that State Farm's profits are regulated by the State of New York and argue that, because some aspect of plaintiff's profit is pre-approved by the State, even if plaintiff had not paid the allegedly fraudulent charges, "it would not result in additional profits for State Farm"; rather, defendants argue, in the absence of fraudulent charges, consumers may have received lower premiums. Therefore, defendants contend, the actual victims of the alleged scheme are patients insured by plaintiff. Relying on Anza v. Ideal Steel, id., defendants argue that plaintiff's claims fail because (i) plaintiff has not suffered a direct

injury; (ii) plaintiff's RICO claims "create problems in apportioning damages among potential victims"; and (iii) other victims could better "vindicate the policies underlying RICO." These arguments are without merit.

Defendants' reliance on Anza is misplaced. In Anza, the plaintiff's RICO claim was based on an allegation that the defendant had defrauded the New York State Department of Taxation and Finance and, in so doing, had injured defendant's competitors by charging artificially low prices. Id. at 457-58. The Anza court rejected the plaintiff's claims, holding that the injury to competitors was too attenuated, as "[i]t was the State that was being defrauded and the State that lost tax revenue as a result." Id. at 458. The situation in Anza is inapposite, indeed, almost opposite, to the allegations here where defendants, through the control, by certain defendants such as Kagan, of medical providers, retailers and wholesalers are alleged to have submitted false and fraudulent claims for reimbursement directly to plaintiff, and plaintiff relied on receipt of these fraudulent claims in paying monies directly to defendants, an injury far more direct than any alleged in Anza. The Amended Complaint alleges that the plaintiff suffered "damages of more than $780,000" as a result of the defendants' conspiracy to commit the predicate acts of mail fraud. Therefore, "[t]his argument must be rejected out of hand." CPT Med. Svcs., 2008 WL 4146190, at *13 (noting that "State Farm's financial losses flow directly from the fraudulent scheme, and it is inconsequential that State Farm may be able to recoup some of those losses through an increase in future premium"). The Amended Complaint alleges a direct injury to State Farm and does not create a problem in apportioning damages.

In addition, the court rejects defendant Kagan's argument that plaintiff has not pled proximate cause because plaintiff was not injured by Kagan so long as services were provided to Insureds. Plaintiff's allegations against defendant Kagan are not limited to an allegation that

Kagan induced medical professionals to permit him ownership and control of medical providers which are required by New York law to be owned and operated by medical personnel (which has been held sufficient for a claim of common law fraud under New York law, <u>supra</u>). Rather, the allegations of Kagan's role in fraudulent incorporation must be taken together with allegations that he improperly controlled medical providers, dictated the medical services provided, allowed particular health care providers to service patients in exchange for kickbacks and improperly siphoned profits to himself under the guise of management fees. These facts, if true, plausibly imply that State Farm was damaged by paying for improper or unnecessary services and supplies, which were requested, at least in part, by non-medical personnel. Therefore, plaintiff has sufficiently pled that defendant Kagan proximately caused injury for the purposes of a RICO violation.

*Detrimental Reliance*

Defendant Kagan, without accompanying explanation or argument, states that plaintiff's RICO allegations must be dismissed because plaintiff does not allege "detrimental reliance" on the fraudulent conduct of defendants.[10] While a plaintiff is required to establish "'reasonable reliance' on the defendants' purported misrepresentations" in order to prevail in a civil RICO action, <u>Bank of China, N.Y. Branch v. NBM LLC</u>, 359 F.3d 171, 178 (2d Cir. 2004), an allegation of reliance "is subject to the liberal pleading requirement set forth in Federal Rule of Civil Procedure 8." <u>Repub. of Columbia</u>, 531 F. Supp. 2d at 382. Therefore, so long as plaintiff has alleged facts that "plausibly" constitute its reasonable reliance on defendants' misrepresentations, those allegations will be sufficient. <u>Twombly</u>, 550 U.S. at 570.

---

[10] While defendant Kagan asserts that he joins the "detrimental reliance" arguments of the other moving defendants, no other moving defendants have made this argument.

Here, plaintiff alleges that defendant Kagan induced physicians to falsely represent that they owned and operated certain medical companies. Plaintiff contends that defendant Kagan secretly owned and operated these medical companies in violation of New York law and that, under Kagan's control, these companies submitted numerous fraudulent medical claims to plaintiff. Plaintiff also alleges that Kagan controlled, or participated in the operation of, Retailers which engaged in a secret kickback system to facilitate the submission of claims for reimbursement at artificially inflated prices. Plaintiff alleges that, relying on the misrepresentations of Kagan and his companies, it paid bills it was not obligated to pay. According to plaintiff, because of defendants' attempts to conceal the fraud, it "should not have reasonably discovered" the fraud until shortly before it filed suit. These allegations amply support a plausible scenario of reasonable reliance on fraudulent claims. See Halima, 2009 WL 750199, at *4; CPT Med Servs., 2008 WL 4146190, at *13.

*Interstate Commerce*

Klotsman defendants' contention that plaintiff's RICO claims fail because the Amended Complaint lacks specificity concerning the effect of the enterprise on interstate commerce is similarly without merit. Only a "de minimis" effect on interstate commerce need be shown. United States v. Meija, 545 F.3d 179, 203 (2d Cir. 2008); DeFalcos v. Bernas, 244 F.3d 286, 309 (2d Cir. 2001). It is the enterprise, not the individual defendant, that must engage in or affect interstate commerce. See Khaimi v. Schonberger, 664 F. Supp. 54, 60 (E.D.N.Y. 1987). Here, plaintiff alleges that defendants submitted fraudulent medical claims to, and affected the business of, plaintiff, a national insurance company, an Illinois corporation, with its principal place of business in Bloomington, Illinois. This alleged fact is sufficient to provide the required interstate

nexus.  See First Capital Asset Mgmt., Inc. v. Satinwood, Inc., 385 F.3d 159, 173 n.12 (2d Cir. 2004).

Accordingly, plaintiff has properly pleaded its RICO violations against the Klotsman defendants and defendant Kagan.

**Other Arguments**

Any arguments by defendants, for example, the role of res judicata or collateral estoppel, as to specific invoices submitted to plaintiff, are premature at this time.  Defendants have failed to identify anything in the pleadings or the public record which is properly considered at this stage of the proceedings.

**Conclusion**

For the reasons set forth above, the court denies the motions to dismiss of the Laufer defendants, the Klotsman defendants and defendant Kagan in their entirety.

**SO ORDERED.**

_____**/s/ Nina Gershon**_____
**NINA GERSHON**
**United States District Judge**

Dated:   September 21, 2009
            Brooklyn, New York