UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------x
STATE FARM MUTUAL AUTOMOBILE  :
INSURANCE COMPANY,            :
                              :    **ORDER and**
            Plaintiff,        :    **REPORT &**
                              :    **RECOMMENDATION**
    -against-                 :    04-CV-2609 (NG)
                              :
SEMION GRAFMAN, et al.,       :
                              :
            Defendants.       :
---------------------------------------------------------------x
GOLD, STEVEN M., U.S.M.J.:

## Introduction

By motion dated July 6, 2010, plaintiff seeks entry of an order directing defendant Jacob Kagan to provide specified discovery and temporarily freezing certain of his assets. Docket Entry 927. The order is intended to prevent Kagan from secreting assets while plaintiff takes additional discovery I authorized during a hearing on June 25, 2010 with respect to Kagan's recent sale of real property he held through an LLC. For the reasons stated below, I grant the motion with respect to the discovery sought and respectfully recommend that plaintiff's application for an order restraining Kagan's assets be granted.

Plaintiff's claims in this case are described in detail in a Memorandum and Order I issued granting in part and denying in part plaintiff's motion for leave to file an amended complaint, Docket Entry 234, and an Opinion and Order rendered by United States District Judge Gershon denying various motions to dismiss, Docket Entry 764. In short, plaintiff alleges that Kagan owned and operated various medical services providers and related entities, that the medical services providers were fraudulently incorporated, and that he used his control of the providers and related entities to cause fraudulent claims for medical services and equipment to be

submitted to plaintiff for reimbursement pursuant to New York State's no-fault motor vehicle insurance laws and regulations. Plaintiff has asserted claims against Kagan under the federal RICO statute and for common law fraud and unjust enrichment. Amended Complaint, Docket Entry 241.

**Plaintiff's Original and First Renewed Motion to Freeze Kagan's Assets**

Plaintiff first sought to freeze defendant Kagan's assets by motion filed March 24, 2006. Docket Entry 116. Plaintiff's motion sought both an order of attachment pursuant to Federal Rule of Civil Procedure 64 and a preliminary injunction pursuant to Rule 65. I heard argument and ruled on the motion on May 23, 2006. *See* Tr. of May 23, 2006, Docket Entry 146-1 ("Tr. of 5/23/06").

Although I ultimately recommended that plaintiff's motion be denied, I expressed serious concern about whether Kagan was attempting to shield his assets from creditors and great skepticism about his attempts to explain the transactions identified by plaintiff. For example, Kagan asserted that he sold real estate he owned jointly with his wife and arranged for the sales proceeds to be placed in an account in his wife's name because of the high interest rate available, but did not explain why an account in his wife's name was eligible to earn that interest rate while one in his own was not. Tr. of 5/23/06 at 37. Similarly, Kagan attempted to explain transfers of assets to a particular company as fees paid for his advice as a consultant, even though he was an owner or manager of the company supposedly paying for his own consulting services. *Id.* Moreover, while Kagan asserted that he conducted certain transactions on the basis of his accountant's advice, he neither identified the accountant nor produced an affidavit or other documents from the accountant to support his assertion. *Id.* at 38.

In opposition to plaintiff's motion for an order of attachment, Kagan's counsel argued that "what's most compelling [is that h]is properties are still in New York. He owns properties in his own name." *Id.* at 43. Kagan's counsel also urged the Court to take into account that "[i]n this case [Kagan] hasn't taken the Fifth. He's denied the allegations. We've been going forward and defending it vigorously." *Id*. at 46.

After hearing from the parties, I issued my ruling orally from the bench. First, I recommended that plaintiff's motion for a preliminary injunction pursuant to Rule 65 be denied on the basis of Supreme Court precedent limiting preliminary injunctions restraining assets to those assets that can be traced to a plaintiff's claim. *Id.* at 59. With respect to the prong of plaintiff's motion seeking an order of attachment pursuant to Rule 64, I began by reviewing the legal standards governing the motion. As I pointed out at the time, Federal Rule of Civil Procedure 64 provides that, "[a]t the commencement of and throughout an action, every remedy is available that, under the law of the state where the court is located, provides for seizing a person or property to secure satisfaction of a potential judgment." Under New York law, and in particular pursuant to N.Y. C.P.L.R. 6201(3), attachment is available when "the defendant, with intent to . . . frustrate the enforcement of a judgment that might be rendered in plaintiff's favor, has assigned, disposed of, encumbered or secreted property." *Id*. at 62.

I then turned my attention to plaintiff's evidence. I stated that "plaintiff has made a fairly persuasive showing that there's an effort being made to strip away assets" and that I was "extremely skeptical of the explanations that Mr. Kagan has put forth in his affidavit." *Id.* at 63. Nevertheless, I recommended that plaintiff's motion be denied. In reaching my decision, I took into account that at least some of the suspicious transactions either took place or were arranged

3

before Kagan was served with plaintiff's complaint, and therefore could not have been intended to frustrate plaintiff's ability to enforce any judgment it might obtain in this case. *Id*. at 4-5. I also based my ruling in part on Kagan's interest in four real properties, and explicitly invited a renewed motion if those real estate holdings were liquidated. *Id.* at 65-66. Moreover, I authorized immediate discovery with respect to Kagan's assets. *Id.* at 66. My report and recommendation on plaintiff's motion was subsequently adopted and my discovery order affirmed by United States District Judge Gershon. Docket Entry 159.

Plaintiff renewed its motion under Rule 64 by letter dated July 31, 2007, Docket Entry 266. In support of its renewed motion, plaintiff pointed out that, despite the argument made by his attorney during the May 23, 2006 hearing, Kagan had refused to answer questions about his assets on Fifth Amendment grounds. Plaintiff also submitted additional evidence in support of its renewed motion. *See* Docket Entries 374, 383. Among other things, plaintiff pointed out that an order of attachment in Kagan's then-pending criminal case that originally restrained approximately $1,357,845 was subsequently modified to restrain only $10,000. Plaintiff also demonstrated that Kagan had transferred real property he owned at 390 Graham Avenue in Brooklyn ("390 Graham"), alleged by Kagan to be worth more than one million dollars, to an LLC.

Although the transactions and circumstances described by plaintiff in support of its renewed motion raised serious concerns, I concluded that Kagan's explanations were sufficient to overcome plaintiff's showing. For example, Kagan submitted evidence indicating that he and his wife each held a fifty per cent interest in Momik Realty, the LLC that took title to the real property at 390 Graham. Letter dated July 7, 2008, Docket Entry 563. After considering all of

4

the facts presented by the parties, I again recommended that plaintiff's motion be denied without prejudice to renewal based upon additional evidence. Docket Entry 748. My recommendation was adopted without objection. Docket Entry 774. Because I remained concerned about the ownership of 390 Graham, I ordered that Kagan produce certain discovery with respect to Momik Realty, the LLC that had acquired it. Docket Entry 748 at 4.

### Plaintiff's Second Renewed Motion to Freeze Kagan's Assets

By letter motion dated May 17, 2010, plaintiff alerted the court that the real property at 390 Graham Avenue was sold on April 26, 2010, and sought immediate production of documents reflecting the disbursement of the sales proceeds. Docket Entry 890. I granted plaintiff's motion by Order dated May 19, 2010. Docket Entry 892.

On June 8, 2010, plaintiff renewed its motion for an order freezing Kagan's assets. In support of its motion, plaintiff argued that defendant had not provided meaningful information about how the proceeds of the sale of 390 Graham had been disbursed, and had thus failed to comply with my Order of May 19, 2010. Defendant argued in response that "[a]ll of Mr. Kagan's actions with regard to his assets have been open and transparent," and submitted documents purporting to illustrate the disposition of the 390 Graham proceeds. Letter dated June 10, 2010, Docket Entry 922, at 2.

Defendant acknowledges that the proceeds of the sale of 390 Graham totaled $1,025,000, and that approximately $733,000 of that amount remained after paying the balance due on the mortgage on the property, real estate commissions, title charges and other expenses connected with the sale. *See* Preliminary Closing Statement enclosed with defendant's letter dated June 10, 2010, Docket Entry 922 ("Statement"). Of the remaining $733,000, *less than $200,000* was paid

5

to the seller, Momik Realty, the LLC owned by Kagan and his wife described above.  Statement, Check No. 2.  Moreover, the account into which the sum paid to the seller was presumably deposited has not been identified.

With respect to the remaining $535,000, almost $150,000 was paid to individuals with no apparent connection to the transaction, and whose relationship to Kagan remains unexplained.  Statement, Check Nos. 4-8.  While it appears that one of the payees who received a check for $50,000, Bruce Broreplevsky, is in fact plaintiff's counsel Bruce Rosenberg, no explanation has been provided for the discrepancy in their respective names.  Of even greater concern, two checks totaling $393,230.20 – more than half of the net sales proceeds – were paid to the escrow account of Boris Volfman, purportedly the attorney and accountant who represented Kagan in connection with the sale of 390 Graham.  Statement, Check Nos. 1 and 3.  Although defendant submitted a document on letterhead that identifies Volfman as an "Attorney at Law" with an office in Rego Park, New York, Docket Entry 922-1 at 2, the New York State Uniform Court System has no listing for a registered attorney with the last name Volfman, *see* *http://iapps.courts.state.ny.us/attorney/AttorneySearch* (last visited July 15, 2010).

The only information Kagan has provided with respect to how the amounts paid to Volfman's escrow account were disbursed appears in a document entitled "Boris Volfman Escrow Transactions by Account as of December 31, 2010."  Docket Entry 922 at 7.  Putting aside the irregularity of a report purporting to reflect transactions as of a date five months in the future, the listing itself is suspicious in several respects.  First, each transaction appears under the heading "Momik to Goodman."  It is undisputed, however, that Momik is the LLC owned by defendant Jacob Kagan and his wife, which in turn owned the 390 Graham property that was

6

sold; Goodman – apparently a reference to Goodman Music Realty, LLC – *purchased* 390 Graham. Kagan has provided no explanation whatsoever of why the seller of the property appears to be paying the majority of the net sales proceeds back to the purchaser. Perhaps the reference to "Momik to Goodman" reflects the transfer of the property rather than the disbursement of the escrowed funds; if so, it seems a strange heading for a list of payments made from the escrow account of Momik's attorney. This odd circumstance is even more suspicious than it at first appears because, according to information uncovered by plaintiff, Goodman Music Realty was organized and created by Volfman, *the attorney and accountant representing Kagan*, just one day before the closing on the sale of 390 Graham. Plaintiff's Letter dated June 17, 2010 and Ex. A thereto, Docket Entry 923.

Of greater concern, Kagan has failed to provide any meaningful information about the payments themselves. The majority of the funds paid to Volfman's escrow account – two checks, one for $200,000 and another for $102,000 – were, according to Volfman's listing of transactions, written from the escrow account to "HSBC." Although copies of other checks have been submitted to the Court, these have not. Nor have any documents been submitted identifying HSBC or explaining why such substantial amounts were paid to it.

I heard argument on plaintiff's second renewed motion on June 25, 2010. Docket Entry 926, Tr. of 6/25/10. Although given ample opportunity to do so, Kagan failed to resolve any of the questions raised by the sale of 390 Graham described above. Two examples are particularly striking.

First, although Kagan knew that his ownership of the 390 Graham property was a factor in this court's decisions denying plaintiff's original and first renewed motion for an order of

attachment, and although Kagan's counsel argued in opposition to plaintiff's original motion that it should be denied because of the substantial real property owned by Kagan, Kagan caused 390 Graham to be sold without any prior notice to plaintiff or the Court.  Moreover, Kagan originally argued that he was "forced to sell 390 Graham" to raise the funds needed to pay the restitution ordered as part of the sentence imposed in his criminal case.  Kagan Letter dated June 10, 2010, Docket Entry 922, at 1.  During the argument, however, Kagan, through his counsel, acknowledged that less than $50,000 of the sales proceeds were used to make the required restitution payment.  Tr. of 6/25/10 at 24 (stating that "[m]ost of the money in that check [for $50,000 paid to counsel] was paid by my office directly to the State to complete the payment for restitution").

As noted above, the majority of the net sales proceeds appear to have been paid to an entity described only as "HSBC."  During the proceeding on June 25, Kagan's counsel advised the court that HSBC is a bank, and that the two checks paid to HSBC were used to pay down mortgages on other real property owned by Kagan.  Tr. of 6/25/10 at 3.  I asked Kagan to produce documents reflecting the payments to HSBC and the correspondingly reduced amounts owed on Kagan's existing mortgages, and Kagan's counsel stated he would do so.  *Id*. at 3, 5.  Although the argument was held three weeks ago, no responsive documents have been provided.

**Plaintiff's Pending Motion for Discovery and a Temporary Asset Freeze**

As a result of the concerns described above, I ruled during the June 25 proceeding that plaintiff could take discovery with respect to the sale of 390 Graham.  Plaintiff now seeks an order directing that Kagan provide certain information, Proposed Order ¶¶ (a)-(c), and authorizing plaintiff to issue certain subpoenas, Proposed Order ¶ (d).  Docket Entry 927-2.

Although Kagan has submitted a letter in opposition to the motion, his opposition offers no further explanation or documentation with respect to the disbursement of the 390 Graham sales proceeds. Docket Entry 928. Accordingly, and for the reasons stated above, I hereby order defendant Kagan to provide the information called for in paragraphs (a) through (c) by 5:00 p.m. on July 23, 2010, and I authorize plaintiff to serve the subpoenas described in paragraph (d).

Plaintiff also seeks entry of an order restraining certain of Kagan's assets. Proposed Order ¶¶ (e)-(j). The order proposed by plaintiff would, among other things, prohibit Kagan from transferring property at 3 Esmac Court and 601 Surf Avenue, 15N, in Brooklyn. *Id*. ¶¶ (h) and (i). Although plaintiff has submitted documents demonstrating Kagan's ownership of the Surf Avenue property, Letter of July 6, 2010, Ex. A, Docket Entry 927-1, it has not submitted any evidence that Kagan owns 3 Esmac Court other than its own statement that Kagan resides at that address. Letter of July 6, 2010 at 4, Docket Entry 927. In his opposition to plaintiff's motion, however, Kagan does not dispute that he resides and owns property at that address, and I therefore consider that fact admitted. Accordingly, and for the reasons stated above, I respectfully recommend that this aspect of plaintiff's motion be granted.

Any objections to this Report and Recommendation must be filed with the Clerk of the Court within fourteen days and in any event no later than August 2, 2010. Failure to file objections within the specified time waives the right to appeal the District Court's Order. *See* 28

U.S.C. § 636(b)(1); FED. R. CIV. P. 6(a), 6(e), 72; *Small v. Sec'y of Health & Human Servs.*, 892 F.2d 15, 16 (2d Cir. 1989).

/s/
**Steven M. Gold**
**United States Magistrate Judge**

**July 16, 2010**
**Brooklyn, New York**