UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------ x
STATE FARM MUTUAL AUTOMOBILE :
INSURANCE COMPANY, :
 :
 :
Plaintiff, :
 : REPORT &
-against- : RECOMMENDATION
 : and
SEIMON GRAFMAN, et al., : ORDER
 : 04-CV-2609 (NG) (SMG)
Defendants. :
------------------------------------------------------------------ x
GOLD, STEVEN M., U.S.M.J.:

## BACKGROUND

Plaintiff State Farm Mutual Automobile Insurance Company ("State Farm") originally brought this action claiming that a number of companies and individuals involved in the distribution of durable medical equipment conspired to make fraudulent claims for reimbursement pursuant to New York's "no-fault" law. State Farm contended that defendants' submission of fraudulent claims for reimbursement caused it to make payments totaling millions of dollars. Seeking to recover the amounts it paid out as a result of defendants' fraud, State Farm asserted substantive and conspiracy claims under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1962(c) and (d), as well as common law fraud and unjust enrichment claims.

A final judgment was entered on May 13, 2013. Docket Entry 1172. The judgment imposes joint and several liability against defendant Jacob Kagan, among others, in the amount of $2,378,311.48. The judgment remains unsatisfied.

Three motions are now pending before the Court: State Farm's Motion to Commence

Special Proceedings to Recover Fraudulently Transferred Property of Jacob Kagan,[1] State Farm's Second Motion to Commence Special Proceedings to Recover Fraudulently Transferred Property of Jacob Kagan,[2] and State Farm's Letter Motion to Compel.[3] Plaintiff's motions to recover property were referred to me for report and recommendation by United States District Judge Nina Gershon. Docket Entry 1210. Plaintiff's motion to compel is within my authority to decide as the assigned Magistrate Judge.

## DISCUSSION

### I. Plaintiff's Motions to Recover Property

*A. Determining Whether a Transfer is a Fraudulent Conveyance*

State Farm seeks to recover property conveyed to others by Jacob Kagan without consideration. Although plaintiff's two motions concern different property, both invoke the same legal rules and standards, and I therefore address them together.

Motions seeking to enforce money judgments are governed by Federal Rule of Civil Procedure 69. Rule 69(a)(1) provides that "proceedings supplementary to and in aid of judgment or execution must accord with the procedure of the state where the court is located." Having been directed to state law procedures, State Farm invokes Rule 5225(b) of New York Civil Practice Law and Rules, which provides as follows:

---

[1] State Farm's motion ("Pl. Mot.") is filed as Docket Entry 1194. Victoria Kagan submitted opposition ("VK Opp."), Docket Entry 1207, and State Farm submitted a reply ("Pl. Reply"), Docket Entry 1208.

[2] State Farm's second motion ("Pl. 2d Mot.") is filed as Docket Entry 1209. Victoria Kagan submitted opposition ("VK 2d Opp."), Docket Entry 1225, and State Farm submitted a reply ("Pl. 2d Reply"), Docket Entry 1226. After I issued an Order, Docket Entry 1234, and held a conference with the parties, Docket Entry 1239, State Farm filed a supplemental brief ("Pl. Supp."), Docket Entry 1238, and a stipulation clarifying the scope of the relief it seeks, Docket Entry 1240. Jacob Kagan then submitted opposition to plaintiff's motions ("JK Opp."), Docket Entry 1241, and Victoria Kagan adopted Jacob Kagan's arguments, Docket Entry 1242. Finally, State Farm filed a further reply brief ("Pl. Supp. Reply"), Docket Entry 1244.

[3] State Farm's motion to compel ("Pl. Compel") is filed as Docket Entry 1219.

> Upon a special proceeding commenced by the judgment creditor, against a person in possession or custody of money or other personal property in which the judgment debtor has an interest, or against a person who is a transferee of money or other personal property from the judgment debtor, where it is shown that the judgment debtor is entitled to the possession of such property or that the judgment creditor's rights to the property are superior to those of the transferee, the court shall require such person to pay the money, or so much of it as is sufficient to satisfy the judgment, to the judgment creditor and, if the amount to be so paid is insufficient to satisfy the judgment, to deliver any other personal property, or so much of it as is of sufficient value to satisfy the judgment, to a designated sheriff. Costs of the proceeding shall not be awarded against a person who did not dispute the judgment debtor's interest or right to possession. Notice of the proceeding shall also be served upon the judgment debtor in the same manner as a summons or by registered or certified mail, return receipt requested. The court may permit the judgment debtor to intervene in the proceeding. The court may permit any adverse claimant to intervene in the proceeding and may determine his rights.

Section 5225(b) thus enables a judgment creditor to initiate special proceedings against transferees to set aside fraudulent transfers made by the judgment debtor. *Aaron v. Mattikow*, 225 F.R.D. 407, 412 (E.D.N.Y. 2004).

In its two motions, State Farm challenges three transfers made by Jacob Kagan. State Farm claims that each of the three transfers meets the definition of a fraudulent conveyance set forth in Section 273-a of New York's Debtor and Creditor Law, which provides as follows:

> Every conveyance made without fair consideration when the person making it is a defendant in an action for money damages or a judgment in such an action has been docketed against him, is fraudulent as to the plaintiff in that action *without regard to the actual intent of the defendant* if, after final judgment for the plaintiff, the defendant fails to satisfy the judgment.

(emphasis added). Thus, "the mere pendency of a money action against a person makes any gratuitous transfer of property by that person fraudulent against the plaintiff." *Mitchell v. Garrison Protective Servs., Inc.*, 579 F. App'x 18, 21 (2d Cir. 2014) (quoting David D. Siegel, Practice Commentaries, N.Y. C.P.L.R. 5225:7 (McKinney 1997)).

### B. The Transferred Property

In its first motion, State Farm challenges two transfers. State Farm first alleges that

Jacob Kagan wrote three checks totaling $83,000 to his wife, Victoria Kagan, on July 9 and 15, 2004. Pl. Mem. at 5; Simms Aff., Docket Entry 121, Ex. 33.[4] This case was filed on June 23, 2004, and Jacob Kagan was served on July 1, 2004. Docket Entries 1, 4. Thus, Jacob Kagan was a defendant in this action when each of the three checks was written. Plaintiff contends that Jacob Kagan transferred these funds to Victoria Kagan without receiving any consideration in return. Pl. Mem. at 5-6. When asked at her deposition whether she had provided any consideration for these checks, Victoria Kagan refused to answer. Pl. 2d Reply Ex. A, Docket Entry 1226-1, at 7-8.

Plaintiff next alleges that the Kagans jointly owned real property located at 74 Tacoma Street on Staten Island, that they sold that property in 2005 while this case was pending and realized more than $300,000 in net proceeds, and that all of the net proceeds were paid by check only to Victoria Kagan. Plaintiff has previously submitted documents reflecting the sale of the property and identifying both Jacob and Victoria Kagan as the sellers. Simms Aff. Ex. 41. Jacob Kagan has acknowledged in an affidavit filed earlier in this case that the entire amount realized from the sale as net proceeds was deposited by Victoria Kagan into her own account. Jacob Kagan Aff., Docket Entry 134, ¶ 17. Jacob Kagan submitted as exhibits to this affidavit two checks representing the proceeds from the sale and made out to Victoria Kagan in the amounts of $227,150.98 and $108,004.08. Jacob Kagan Aff. Ex. Q, Docket Entry 134-18. Plaintiff contends that Jacob Kagan received no consideration in return for allowing all of the proceeds of the sale of property he and Victoria Kagan owned together to be paid exclusively to Victoria Kagan. Although plaintiff originally sought to recover the entire amount of the Tacoma

---

[4] Plaintiff refers in support of its motion to exhibits filed in support of an earlier, pre-judgment motion for attachment, Docket Entry 116. Certain exhibits were submitted in support of that motion only in hard copy. The Court retained its hard copies of the exhibits and has reviewed them in connection with its consideration of the instant motion.

proceeds, it has since modified its position by acknowledging that Victoria Kagan already had an interest in the property before it was sold. Accordingly, plaintiff now seeks only $167,557.50, or slightly less than half of the proceeds from the sale of the property. Docket Entry 1240.

Plaintiff's second motion identifies a third transfer of property. In September of 2000, before this action was filed, Jacob Kagan acquired real property located at 390 Graham Avenue, Brooklyn, in his own name. Pl. 2d Mot. Ex. A, Docket Entry 1209-1. On August 9, 2004, or about one month after being served with the complaint in this case, Jacob Kagan transferred title to the Graham Avenue property from his own name to joint ownership with Victoria Kagan. Pl. 2d Mot. Ex. C, Docket Entry 1209-1. Victoria Kagan did not provide any consideration in return for her interest in the Graham Avenue property. Pl. Supp. Ex. A, Docket Entry 1238-1, Deposition of Jacob Kagan ("JK Dep.") at 10; Deposition of Victoria Kagan ("VK Dep.") at 10-11.

Although Victoria Kagan was not a defendant at the time she became a joint owner of the Graham Avenue property, an amended complaint naming her as a defendant was filed on June 4, 2007, and Victoria Kagan answered the amended pleading on August 15, 2007. Docket Entries 241, 276. On or about June 12, 2008, Jacob and Victoria Kagan transferred their interest in the Graham Avenue property to an entity known as Momik Realty, LLC. Pl. 2d Mot. Ex. D, Docket Entry 1209-1; JK Dep. at 10-11. Momik, an LLC formed by the Kagans for tax purposes and wholly owned by them, did not provide any consideration in return. JK Dep. at 11, 37; VK Dep. at 12; JK Opp. at 3. Momik Realty sold the property on or about April 26, 2010 to Goodman Music Realty, LLC for $1,025,000. Pl. 2d Mot. Ex. E, Docket Entry 1209-1; JK Dep. at 11. Jacob Kagan has acknowledged that $500,000 of the sales proceeds was used to pay down the mortgage on his primary residence located at 3 Esmac Court on Staten Island. JK Dep. at 12; s*ee*

5

*also* Memorandum and Order of United States District Judge Nina Gershon, Docket Entry 966, at 2.

State Farm claims it is entitled to recover the $83,000 in checks and $167,557.50 of the proceeds from the sale of the Tacoma property by straightforward application of Section 273-a of New York's Debtor and Creditor Law: Kagan was a defendant when the checks and his interest in the Tacoma property were transferred, he did not receive consideration for the transfers, and he has not paid the outstanding judgment against him. State Farm argues that the proceeds realized from the sale of the Graham Avenue property are likewise recoverable because there was no consideration for Jacob Kagan's transfer of an interest in the property to Victoria Kagan in August of 2004, and because there was no consideration for the Kagans' transfer of the property to Momik in June of 2008. State Farm further points out that that a substantial portion of the proceeds of the sale by Momik to Goodman Music was used to pay down the mortgage on the Kagans' primary residence, and suggests that the Kagans were attempting to convert a non-exempt asset (their equity in the Graham Avenue property) into one at least partially protected by New York's homestead exemption (their equity in the Esmac Court property). *See* N.Y. C.P.L.R. 5206.

### C. *Victoria and Jacob Kagan's Arguments in Opposition*

As noted above, Jacob and Victoria Kagan have submitted opposition to plaintiff's motions. The Kagans do not challenge the accuracy of the basic facts set forth by plaintiff in support of its motions. Rather, they assert legal defenses that they contend preclude the relief plaintiff seeks.

#### i. Limitations

Victoria Kagan first asserts that State Farm's motion is barred by a statute of limitations.

VK Opp. at 2. Victoria Kagan relies in this regard on N.Y. C.P.L.R. 213(8), which provides that an action based on fraud must be commenced within the greater of six years or two years from when the plaintiff discovered, or should have discovered, the fraud. Victoria Kagan also invokes the holding in *Citicorp Trust Bank, FSB v. Makkas*, 67 A.D. 3d 950 (2d Dep't 2011). In *Makkas*, the Court held that constructive fraud claims predicated on Section 273-a of New York's Debtor and Creditor Law are governed by the six-year limitations period set forth in N.Y. C.P.L.R. 213(1) and accrue at the time the challenged conveyance is made. 67 A.D. 3d at 952.

As plaintiffs correctly point out, however, the Second Department abrogated its holding in *Makkas* in *Coyle v. Lefkowitz*, 89 A.D. 3d 1054 (2d Dep't 2011). Pointing out that "[t]he existence of an unsatisfied judgment is an 'essential element' of a constructive fraud cause of action pursuant to Debtor and Creditor Law § 273-a," the Court held in *Coyle* that

> the six-year limitations period for such a claim begins to run on the date of entry of the judgment. To the extent that prior decisions of this Court have held that a constructive fraud claim predicated upon Debtor and Creditor Law § 273-a arises at the time that the alleged fraudulent conveyance is made [citing *Makkas*], they should no longer be followed.

89 A.D. 3d at 1056 (internal citations omitted). *See also Felshman v. Yamali*, 106 A.D. 3d 948, 949 (2d Dep't 2013); *Comm'rs of State Ins. Fund v. P.S.G. Constr. Co., Inc.*, 91 A.D. 3d 643, 643-44 (2d Dep't 2012). Victoria Kagan argues that *Coyle* should be applied prospectively and not to conveyances made before the decision was rendered, but offers no support for her contention; indeed, the Court in *Coyle* applied its holding to the transfers at issue in the case before it.

The final judgment in this case was entered on May 13, 2013. Docket Entry 1172. Any constructive fraud claim based upon Debtor and Creditor Law § 273-a would therefore be timely if brought before May 13, 2019. Accordingly, plaintiff's motions are not barred by the

7

applicable statute of limitations.

      ii. <u>Release</u>

Victoria Kagan next asserts that she entered into a settlement agreement and obtained a general release that precludes plaintiff from pursuing these motions seeking to recover assets she obtained as a transferee. Victoria Kagan's argument, however, misconstrues the terms of the release.

The document, titled Settlement Agreement and Release, provides in relevant part as follows:

> <u>Release of Victoria Kagan.</u> State Farm hereby releases and discharges Victoria Kagan from any and all claims, demands, losses, liabilities, costs, actions, causes of action, suits or judgment of any kind whatsoever, whether in law or equity, known or unknown, foreseen or unforeseen, that State Farm *has or had against Victoria Kagan arising from or relating to any claim for medical services* rendered prior to the date of this Agreement. This release and discharge does not apply to or affect in any way any claims, demands, losses, liabilities costs, actions, causes of action, suits or judgments that State Farm has or had against anyone other than Victoria Kagan, and *does not apply to or affect in any way claims, demands, losses, liabilities, costs, actions, causes of action, suits or judgments that State Farm has or had [sic] Jacob Kagan*.

Settlement Agreement and Release, Docket Entry 1186, ¶ 4 (emphasis added). Victoria Kagan was represented by counsel at the time she entered into the agreement. *See* Stipulation and Order of Dismissal with Prejudice for Defendant Victoria Kagan, Docket Entry 1114.

As the plain language of the release makes clear, it is *not* a general release, but rather is a release only of causes of action against Victoria Kagan arising from claims for medical services rendered. Moreover, the release explicitly does not apply to any claims State Farm has or had against Jacob Kagan. The relief State Farm seeks in its pending motions arises from its judgment against Jacob Kagan, and plaintiff does not seek damages or any other remedy in connection with the claims it had against Victoria Kagan arising from medical services rendered

8

before the date of her settlement agreement. Although the release might have been written more clearly,[5] the intent of the parties to the agreement is readily discerned from its language: to release all claims against Victoria Kagan for her part in the no-fault fraud alleged in the complaint, but not to release any other claims against Victoria Kagan and not to release any claims at all against Jacob Kagan. Accordingly, plaintiff's motions to recover fraudulently transferred property are not barred by the release.

   iii. <u>Lack of Fraudulent Intent</u>

Jacob Kagan argues that State Farm's motions should be denied because he made the challenged transfers without fraudulent intent. JK Opp. at 5-9. In this regard, Jacob Kagan emphasizes that plaintiff previously sought relief based upon the same transactions, and that State Farm's application was rejected by the Court.

The earlier motion practice referred to by Jacob Kagan took place before the entry of final judgment against him, and the rulings the Court made at that time therefore have little if any bearing on the motions State Farm brings now. In these earlier motions, State Farm sought attachment, a remedy available pursuant to N.Y. C.P.L.R. 6201(3) when "the defendant, with intent to . . . frustrate the enforcement of a judgment that might be rendered in plaintiff's favor, has assigned, disposed of, encumbered or secreted property." Contrary to the suggestion made in Jacob Kagan's opposition memorandum, Docket Entry 1241 at 5, this Court did in fact find that

---

[5] It could be argued that State Farm's motions make a demand of some kind against Victoria Kagan as a transferee, that the judgment against Jacob Kagan arises from a claim for medical services rendered, and that the pending motions are therefore barred by the release language, "State Farm hereby releases and discharges Victoria Kagan from any and all … demands … of any kind whatsoever … that State Farm has or had against Victoria Kagan arising from or relating to any claim for medical services rendered." Such a reading would be far more strained than the more natural reading set forth in the text, however, and neither Jacob nor Victoria Kagan has argued for it or proffered any extrinsic evidence to support it. Moreover, the agreement was made on June 24, 2011, and the final judgment in this case was not entered until May 13, 2013. Thus, and because an unsatisfied judgment is an essential element of a constructive fraud cause of action pursuant to Debtor and Creditor Law § 273-a, *Coyle*, 89 A.D. 3d at 1056, the claims asserted in the pending motions are not ones State Farm "has or had" at the time it entered into the Settlement Agreement and Release with Victoria Kagan.

at least some of Jacob Kagan's transfers of property bore sufficient indicia of fraud to warrant an order of pre-judgment attachment.  *See* Memorandum and Order, Docket Entry 966.

In any event, whether or not State Farm has demonstrated Jacob Kagan's fraudulent intent in support of the pending motions is of no moment because, as noted above, Debtor and Creditor Law § 273-a provides that any conveyance made without fair consideration is "fraudulent as to the plaintiff . . . *without regard to the actual intent of the defendant* if, after final judgment for the plaintiff, the defendant fails to satisfy the judgment" (emphasis added).  Jacob Kagan has failed to satisfy the judgment against him.  State Farm therefore need not establish fraudulent intent in order to prevail on its pending motions.

### iv. Procedural Considerations

Plaintiff's motions are brought seeking leave "to commence [a] special proceeding to recover fraudulently transferred property of Jacob Kagan."  Uncertain about whether State Farm was seeking an order transferring title to property or merely permitting it to commence a new action, I scheduled a conference to address the question.  Docket Entry 1234.  During that conference, plaintiff explained that the primary reason it suggested the possibility of commencing a special proceeding was to provide any party seeking discovery with an opportunity to obtain it.  *See also* Pl. Supp. Mem., Docket Entry 1238, at 5.  I afforded plaintiff, Jacob Kagan and Victoria Kagan the opportunity to submit supplemental memoranda after the conference.  See Docket Entries 1238, 1241, 1242, 1244.  None were able to identify any discovery they sought or any other reason to commence a special proceeding.[6]

Jacob Kagan nevertheless argues that plaintiff should be required to commence a new action and not be permitted to proceed by motion.  JK Opp. at 3.  Jacob Kagan cites *Runaway*

---

[6] The conference was held on September 23, 2014.  Docket Entry 1239.  Although the conference was recorded, a transcript has not been prepared.

10

*Dev. Grp. v. Pentagen Techs. Int'l., Ltd.*, 396 F. Supp. 2d 471 (S.D.N.Y. 2005) in support of his position, and that case does indeed hold that a plaintiff invoking N.Y. C.P.L.R. 5225(b) must commence a new action and may not proceed by motion. 396 F. Supp. 2d at 474. Subsequent cases have repeatedly held, however, "that Federal Rule of Civil Procedure 69(a) does not require strict adherence to state procedural law, and that [a] judgment creditor may seek the relief provided under state law through a motion made in the original action." *Mitchell v. Lyons Prof'l Servs., Inc.*, 727 F. Supp. 2d 120, 121 (E.D.N.Y. 2010). Indeed, in *Northern Mariana Islands v. Millard*, the Court, while acknowledging the holding in *Runaway*, noted that "[n]early every court in this Circuit to consider the issue has held that parties can bring a motion under FRCP 69(a), rather than instituting a special proceeding under the New York state law." 845 F. Supp. 2d 579, 581 (S.D.N.Y. 2012) (citing cases). *See also Universitas Educ., LLC v. Nova Grp., Inc.*, 2014 WL 3883371, at *8 (S.D.N.Y. Aug. 7, 2014); *SEC v. Vuono*, 2013 WL 6837568, at *3 (E.D.N.Y. Dec. 26, 2013). Plaintiff's election to proceed by motion is therefore not a procedural defect and poses no obstacle to the relief it seeks.

Jacob Kagan also argues that plaintiff's motions are procedurally deficient because certain parties whose interests might be affected have not been served or otherwise afforded the opportunity to be heard. In particular, Jacob Kagan contends that Momik Realty, LLC, Goodman Music, LLC and HSBC Bank should have been served and afforded an opportunity to be heard.

N.Y. C.P.L.R. 5225(b) provides that a court "may permit any adverse claimant to intervene in the proceeding and may determine his rights." State Farm does not allege that the transfer of the Graham Avenue property from Momik to Goodman Music was unsupported by fair consideration or otherwise fraudulent and does not seek to recover any property or obtain

11

other relief from Goodman Music. State Farm similarly does not seek any relief from HSBC Bank or to impose any obligation upon it. Rather, State Farm seeks only orders requiring Victoria Kagan and Momik to pay money damages to it. Pl. Mot., Docket Entry 1194, at 7; Pl. 2d Mot., Docket Entry 1209, at 7. Accordingly, neither Goodman Music nor HSBC Bank are or might be adverse claimants, and there is accordingly no reason to require State Farm to serve them or to afford them an opportunity to intervene.

Momik Realty is wholly owned by Jacob and Victoria Kagan. *See, e.g.,* JK Opp., Docket Entry 1241, at 3 (describing Momik as "an entity owned wholly by the Kagans"). Service on a limited liability company may be made by delivering a copy to a member or other agent authorized to receive service of process. N.Y. C.P.L.R. 311-a. Jacob and Victoria Kagan have already been served with the pending motions. *See* Pl. Mot., Docket Entry 1194, at 7 (Certificate of Service); Pl. 2d Mot., Docket Entry 1209, at 8 (Certificate of Service). Accordingly, Momik has effectively been served as well. If Momik wishes to intervene or be heard in opposition to plaintiff's motion, it may make an appropriate application to the Court during the time permitted for filing objections to this Report.

*D. Conclusion with Respect to Plaintiff's Motions to Recover Property*

For all the reasons stated above, I respectfully recommend that plaintiff's motions to recover the properties identified above be granted and that an Order be entered requiring Victoria Kagan to pay to State Farm $83,000, representing the proceeds of checks written by Jacob Kagan to her in July of 2004, and $167,557.50, representing approximately one-half of the proceeds realized from the sale of the property at 74 Tacoma Street on Staten Island. *See* Pl. Mot. at 7; Pl. Letter dated Sept. 24, 2014, Docket Entry 1240. Plaintiff does not specify the dollar amounts it seeks to recover with respect to the Graham Avenue property. Pl. 2d Mot. at 7. Accordingly,

plaintiff shall, within the time for filing objections to the recommendations made in this Report, submit a letter or memorandum of law stating the amounts it contends it is entitled to recover from Victoria Kagan and Momik and explain the basis for its contention.

## II. Plaintiff's Motion to Compel

Plaintiff deposed Jacob and Victoria Kagan in aid of execution of its judgment. At those depositions, each refused to answer questions about transactions that took place more than six years earlier. Plaintiff now moves to compel Jacob and Victoria Kagan to provide responses to the questions they refused to answer at their depositions.

The Kagans' refusal to answer questions was apparently based upon their contention that a six-year limitations period applied to plaintiff's motions, as the Court held in *Makkas*, and upon a ruling I made on January 17, 2014, ordering Jacob Kagan to provide documents and information pertaining to a six-year period. *See* Docket Entry 1197. As noted above, *Makkas* is no longer good law, and even transfers that took place more than six years ago may be found to be fraudulent pursuant to Debtor and Creditor Law § 273-a. Moreover, while my Order of January 17, 2014 required Jacob Kagan to provide six years of financial information, it did not limit the questioning at his deposition to that time period. Accordingly, plaintiff's motion to compel is granted. If plaintiff chooses to reconvene the depositions in person, it may do so; if written questions will suffice, plaintiff may propound them.

Plaintiff seeks an award of fees and costs pursuant to Federal Rule of Civil Procedure 37(a)(5)(A) and emphasizes the rule's mandatory language. However, the rule also provides that a court should not award expenses when circumstances would make an award unjust. Fed. R. Civ. P. 37(a)(5)(A)(iii). As discussed above, the case law regarding the limitations period applicable to a proceeding governed by Debtor and Creditor Law § 273-a has recently evolved,

and the Kagans may well have reasonably relied on the *Makkas* decision. Moreover, my Order may have reasonably been interpreted as a general limit on the permissible scope of discovery. Accordingly, an award of expenses would not, under these circumstances, be just, and this aspect of plaintiff's motion is denied.

## CONCLUSION

For the reasons stated above:

1) Plaintiff's motion to compel, Docket Entry 1219, is GRANTED to the extent that Jacob and Victoria Kagan shall respond to the questions they refused to answer at their depositions because they involved events more than six years old but DENIED to the extent plaintiff seeks an award of fees and costs;

2) I respectfully recommend that plaintiff's First Motion to Commence Special Proceedings to Recover Fraudulently Transferred Property of Jacob Kagan, Docket Entry 1194, be granted, and that an Order be entered requiring Victoria Kagan to pay to State Farm $83,000, representing the proceeds of checks written by Jacob Kagan to her in July of 2004, and $167,557.50, representing approximately one-half of the proceeds realized from the sale of the real property at 74 Tacoma Street on Staten Island; and

(3) I respectfully recommend that plaintiff's Second Motion to Commence Special Proceedings to Recover Fraudulently Transferred Property of Jacob Kagan, Docket Entry 1209, be granted, and I direct State Farm to submit a letter or memorandum of law setting forth the amounts it seeks to recover from Victoria Kagan and Momik Realty, LLC and the basis for the amounts sought.

Any objections to this Report and Recommendation must be filed within fourteen days of this Report and in any event no later than February 9, 2015. Failure to file objections within the

specified time may waive the right to appeal the District Court's order.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72; *Small v. Sec'y of Health & Human Servs.*, 892 F.2d 15, 16 (2d Cir. 1989).

Brooklyn, New York
January 21, 2015

/s/
STEVEN M. GOLD
United States Magistrate Judge

*U:\smg current docs\Kagan 012114 final.docx*