FILED
IN CLERK'S OFFICE
US DISTRICT COURT E.D.N.Y.
★ DEC 23 2015 ★
BROOKLYN OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------x
STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY,

                                  **Plaintiff,**

- against -

SEMION GRAFMAN, et al.,

                                  **Defendants.**
------------------------------------------------------x

**OPINION & ORDER**
**04-CV-2609 (NG)(SMG)**

GERSHON, United States District Judge:

On June 23, 2004, Plaintiff State Farm Mutual Automobile Insurance Company ("State Farm") commenced this action seeking damages against a number of companies and individuals in connection with their involvement in a conspiracy to make fraudulent claims for reimbursement pursuant to New York State's "no-fault" insurance law. The claims asserted by State Farm included substantive and conspiracy claims under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962 (c) and (d), as well as New York common law claims of fraud and unjust enrichment. The dozens of defendants included Jacob Kagan, the alleged owner of certain medical supply retailers and clinics involved in the scheme, as well as his wife, Victoria Kagan, and Mirka United, Inc. ("Mirka"), a corporation of which Jacob Kagan was the sole owner/operator.

The ensuing litigation saw protracted discovery disputes and extensive motion practice, culminating, after nine years, in settlements with many of the defendants, including Victoria Kagan, and the entry of default judgment against many others, including Jacob Kagan and Mirka. While some defendants defaulted by failing to appear or participate in the preparation of the pretrial order, the default judgments entered against defendants Jacob Kagan and Mirka were,

1

instead, the consequence of their intentional frustration of plaintiff's efforts to obtain necessary discovery. By Order dated April 4, 2011, I granted plaintiff's motion for case-terminating sanctions against Kagan and Mirka. Ordering the entry of default judgment on liability against them, I concluded that they had, throughout the litigation, "resisted providing discovery or co-operating with plaintiff in any meaningful way," and that "[t]heir actions have resulted in a waste of judicial resources over the course of the last seven years and have required this court to become the micromanager of discovery in this litigation." *State Farm Mutual Auto Insurance Co. v. Grafman*, 274 F.R.D. 442, 452 (E.D.N.Y. 2011).

The claims against all defendants thus resolved with regard to liability, the issue of damages was referred to Chief Magistrate Judge Steven M. Gold, and I adopted his Report and Recommendation, with slight modification, on May 8, 2013. *See State Farm Mutual Auto Insurance Co. v. Grafman*, 968 F.Supp. 2d 480 (E.D.N.Y. 2013). Final judgment, which provided, in relevant part, for joint and several liability in the amount of $2,378,311.48 against Jacob Kagan and several others, was entered on May 13, 2013. *See* Clerk's J., May 13, 2013, ECF No. 1172.

**The Present Motions**

Since then, State Farm's efforts to enforce this judgment have been met with little success, and it finds itself, once again, in need of the court's assistance. Specifically, plaintiff contends that Jacob Kagan's transfer of certain property during the pendency of this litigation has now stymied its ability to enforce the judgment against him, and that the conveyances are fraudulent under New York Debtor and Creditor Law § 273-a. State Farm seeks to recover the property or its equivalent monetary value from Victoria Kagan and Momik Realty, LLC ("Momik"), a Kagan-owned entity, as fraudulent transferees. In order to do so, State Farm has filed two motions to commence special proceedings to set aside these allegedly fraudulent conveyances under § 5225(b) of the New York

Civil Practice Law and Rules.[1] *See* Pl.'s Mot. to Commence Special Proceedings, January 14, 2014, ECF No. 1194 and Pl.'s Second Mot. to Commence Special Proceedings, April 9, 2015, ECF No. 1209.

**The Report**

By Order dated April 16, 2014, I referred these two motions to Judge Gold. On January 21, 2015, Judge Gold filed a "Report & Recommendation and Order" (the "Report"), in which he recommends that both motions be granted and an order entered directing Victoria Kagan to make payments to State Farm of $83,000 and $167,557.50, which amounts represent proceeds of fraudulently transferred property she received from Jacob Kagan. Judge Gold further noted, however, that plaintiff had not specified the dollar amount it sought in connection with a third piece of property (the "Graham Avenue Property"), which had been transferred, first, from Jacob Kagan as sole owner, to Jacob Kagan and Victoria Kagan as joint owners, and subsequently, from the Kagans to Momik. Judge Gold therefore directed plaintiff "to submit a letter or memorandum of law stating the amounts it contends it is entitled to recover from Victoria Kagan and Momik and explain the basis for its contention." Report, 13.

By letter dated February 4, 2015, in response to this directive, plaintiff advised the court that it was seeking the entry of judgment in the amount of $1,025,000 against Jacob Kagan, Victoria Kagan and Momik, jointly and severally, in connection with the transfer of the Graham Avenue Property. Pl.'s Mem. Supp. Damages Request Set Forth in Mot. to Commence Special Proceedings 3, February 4, 2015, ECF No. 1247. This amount represents the purchase price of

---

[1] State Farm also moved to compel Jacob and Victoria Kagan to produce certain financial information. (*See* ECF Doc. # 1219.) This motion was not included in the referral as it is within the decisional authority of the assigned Magistrate Judge. *See* Rule 72.2 of the Local Rules of the U.S. District Courts for the Southern and Eastern Districts of New York. The motion to compel, which was granted in part, is also discussed in the Report and comprises the "Order" portion thereof.

the property when it was conveyed from Momik to third party Goodman Music Realty, LLC ("Goodman Music").

**Defendants' Objections and Subsequent Submissions**

On February 5, 2015, Jacob Kagan submitted his timely objection to the Report, arguing that the award of any judgment at this time would be "premature and inappropriate" and that Judge Gold's recommendation to grant the motion should, if adopted, result only in the commencement of a special proceeding where defendants would be permitted to offer evidence as to both liability and damages. ECF No. 1248. Jacob Kagan further objected to Judge Gold's directive to plaintiff regarding the Graham Avenue Property on the basis that defendants were not given an opportunity to respond. *Id.*

Victoria Kagan filed her timely objection to the Report on February 6, 2015. ECF No. 1249. In addition to joining in and adopting all of the arguments raised by Jacob Kagan, Victoria Kagan further objected on the ground that Judge Gold had "misapplied the law and facts regarding the Release of Victoria Kagan by State Farm." *Id.* at 1. She did not elaborate on this contention.

On February 19, 2015, plaintiff submitted its reply to the objections of both defendants. ECF No. 1250. By Order dated May 13, 2015, Judge Gold directed defendants to respond, specifically and solely, to the amount of damages set forth in plaintiff's February 4 letter, warning that the "[f]ailure to submit a [timely] response will result in the Court's acceptance of the arguments set forth in plaintiff's letter as unopposed."

By letter dated May 27, 2015, Jacob Kagan sought a two-week extension of the deadline for his response, asserting that more time was needed in order to obtain information about the Graham Avenue Property transfer. ECF No. 1251. Judge Gold granted his request by Order dated May 28, 2015. Jacob Kagan's response was received June 12, 2015. ECF No. 1253.

4

By letter dated May 28, 2015, Victoria Kagan offered a more detailed objection to Judge Gold's conclusion that the sale of the Graham Avenue Property amounts to a fraudulent transfer. ECF No. 1252. She argued, without citation to authority, that, even though she and Momik received their respective interests in the Property without consideration, the proceeds from the 2010 sale, by Momik to Goodman Music, were used to pay down the mortgage on the Kagans' primary residence, and that they are thus outside the reach of judgment creditors.

With respect to the amount of damages sought in connection with the Graham Avenue Property, Victoria Kagan requested an additional 21 days to "proffer a full copy of the property's closing statement," in order to demonstrate that the sale price was not reflective of the amount of any actual gain received by the Kagans, since it did not take into account any payments made by the Kagans either toward the purchase or toward improvements on the property. *Id.* at 1. Judge Gold granted this request by Order dated June 2, 2015. By letter dated June 19, 2015, however, Victoria Kagan stated that, rather than submitting any additional documentation, she intended to rely upon certain checks submitted by Jacob Kagan in connection with his opposition papers. ECF No. 1255.

Finally, plaintiff requested additional time to prepare a response to the submissions of Jacob Kagan and Victoria Kagan. Judge Gold directed them to respond by June 26, 2015.

Despite Judge Gold's express invitation to do so, Momik has filed no opposition or otherwise indicated a wish to be heard. *See* Report, 12.

On October 22, 2015, Judge Gold issued his Supplemental Report and Recommendation ("Supplemental Report"), in which he recommends the relief to be awarded for the fraudulent transfer of the Graham Avenue Property. No objections have been filed to the Supplemental Report.

5

**Standard of Review**

In reviewing the Report and Supplemental Report, the court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C). Insofar as timely objections have been filed by defendants Victoria Kagan and Jacob Kagan to the Report, my review of the portions of the Report relating to such objections is *de novo*. *See United States v. Male Juvenile*, 121 F.3d 34, 38 (2d Cir. 1997); *see also* Fed. R. Civ. P. 72(b)(3). Defendants' objections, however, relate only to part of the Report. In order to accept the sections of the Report to which the objections do not apply, "a district court need only satisfy itself that there is no clear error on the face of the record." *Urena v. People of State of New York*, 160 F. Supp. 2d 606, 609-10) (S.D.N.Y. 2001) (quoting *Nelson v. Smith*, 618 F. Supp. 1186, 1189 (S.D.N.Y. 1085)); *see also Pizarro v. Bartlett*, 776 F. Supp. 815, 817 (S.D.N.Y. 1991) (adoption permitted where the un-objected-to sections are not "facially erroneous"). This "clear error" standard also applies where "a party makes only conclusory or general objections, or simply reiterates its original arguments." *Bassett v. Electronic Arts, Inc.*, 93 F. Supp. 3d 95, 101 (E.D.N.Y. 2015); *Ogunbayo v. City of New York*, 2014 WL 60009, at *7 (E.D.N.Y Jan. 7, 2014); *see also DePrima v. City of New York Department of Education*, 2014 WL 1155282, at *3 (E.D.N.Y. Mar. 20, 2014).

**Analysis**

Judge Gold's recommendations are the result of his diligent efforts to ensure that the parties had every available opportunity to present evidence and argue in support of their positions. His Report lays out in detail plaintiff's factual allegations with respect to the transferred property, and he notes, expressly, that "[t]he Kagans do not challenge the accuracy of the basic facts set forth by plaintiff in support of its motions." Report, 6. Likewise, neither Jacob Kagan nor Victoria Kagan

has made a specific objection to the factual findings contained in the Report, and my review of the record establishes no clear error.[2] Accordingly, I accept and adopt the factual findings reported by Judge Gold.

Similarly, with the exception of the issue discussed below, neither Jacob Kagan nor Victoria Kagan has offered any specific objection to the legal conclusions set forth in the Report. Judge Gold addressed with clarity and care each of the arguments raised in multiple submissions received by the parties, and I find no error in his analysis. Accordingly, Judge Gold's legal conclusions relating to the applicable statute of limitations, release, fraudulent intent, and the applicability of § 273-a of the Debtor and Creditor Law are hereby adopted.

I turn, next, to Jacob Kagan's objection to the manner in which Judge Gold arrived at his recommendations. He argues that plaintiff moved only for "leave to commence a special proceeding to recover property of Jacob Kagan that was allegedly fraudulently transferred to Victoria Kagan" and that the result of such a motion, if successful, is not the award of a money judgment, as recommended by Judge Gold, but rather, the commencement of a proceeding authorized by § 5225(b) of the New York Civil Practice Law and Rules (the "CPLR"). Def.'s Objection to Report and Recommendation 1, February 5, 2015, ECF No. 1248. The import of this distinction, he argues, is that Judge Gold's approach has deprived him and Victoria Kagan of the opportunity to offer evidence showing "consideration or partial consideration" for the property transfers at issue here. *Id.* He therefore asks the court to reject or modify the Report insofar as it makes conclusive findings of liability and recommends the entry of judgment.

---

[2] Although Victoria Kagan asserts that Judge Gold "misapplied the law and facts regarding the Release of Victoria Kagan" (Def.'s Objection to Report and Recommendation 1, February 6, 2015, ECF No. 1249), this conclusory objection is insufficient to trigger *de novo* review of Judge Gold's factual findings. *See, e.g., Ogunbayo*, 2014 WL 60009, at *7 (concluding that plaintiff's objections to the Magistrate's factual findings were "general" and thus reviewing those findings only for clear error).

I reject this objection for the following reasons.

First, as Judge Gold's discussion of the relevant statutes and case law makes clear, Rule 69 of the Federal Rules of Civil Procedure, which governs the execution of judgments, provides that "[t]he procedure on execution—and in proceedings supplementary to and in aid of judgment or execution—must accord with the procedure of the state where the court is located, but a federal statute governs to the extent it applies." Fed. R. Civ. P. 69(a). There is no dispute that the applicable procedure under state law is put forth in CPLR § 5225(b), which provides, in relevant part, that:

> [u]pon a special proceeding commenced by the judgment creditor, against a person . . . who is a transferee of money or other personal property from the judgment debtor, where it is shown that . . . the judgment creditor's rights to the property are superior to that of the transferee, the court shall require such person to pay the money, or so much of it as is sufficient to satisfy the judgment, to the judgment creditor . . .

N.Y. C.P.L.R. § 5225(b). Although this section refers to the commencement of a special proceeding, many courts in this Circuit have determined that Rule 69(a) "does not require strict adherence to state procedural law, and that the judgment creditor may seek the relief provided under state law through a motion made in the original federal action." *Mitchell v. Lyons Professional Services, Inc.*, 727 F. Supp. 2d 120, 121 (E.D.N.Y. 2010). Indeed, "[n]early every court in this Circuit to consider the issue has held that parties can bring a motion under FRCP 69(a), rather than instituting a special proceeding under New York state law."[3] *Northern Mariana*

---

[3] This is appropriate, in part, because the "special proceeding is a creature of New York law with no federal analogue. '[It is] a civil judicial proceeding in which a right can be established or an obligation enforced in summary fashion. Like an action, it ends in a judgment, but the procedure is similar to that on a motion. Speed, economy and efficiency are the hallmarks of this procedure.'" *S.E.C. v. Colonial Investment Management LLC*, 2010 WL 4159276, at *2 (S.D.N.Y. Oct. 6, 2010) (quoting Vincent C. Alexander, Comment C401:1 (McKinney's N.Y. C.P.L.R. 2010)). The availability of this distinctively New York procedure "reflects a legislative determination that the relief sought will often, although not always, require the resolution of primarily legal issues, rather than factual ones," and it therefore "has more in common with motion practice than it does with a plenary action." *Mitchell*, 727 F. Supp. 2d at 122-23.

8

*Islands v. Millard*, 845 F. Supp. 2d 579, 581 (S.D.N.Y. 2012); *see also, e.g., Universitas Education, LLC v. Nova Group, Inc.*, 2014 WL 3883371 (S.D.N.Y. Aug, 7, 2014); *S.E.C. v. Vuono*, 2013 WL 6837568 (E.D.N.Y. Dec. 26, 2013). To the extent that the case relied upon by Jacob Kagan, *Runaway Development Group, S.A. v. Pentagen Technologies International Limited*, 396 F. Supp. 2d 471 (S.D.N.Y. 2005), is to the contrary, I find it less persuasive than the cases cited above.

Insofar as Jacob Kagan asserts that a special proceeding would provide defendants with an opportunity to "offer evidence of consideration or partial consideration from their own records," and that they are therefore prejudiced by Judge Gold's decision to let plaintiff proceed by way of motion, I note, first, that this argument relates only to the Graham Avenue Property, and that the deposition testimony of both defendants makes clear that no consideration was paid for the transfer of the Graham Avenue Property from Jacob Kagan to himself and Victoria Kagan, and that no consideration was paid for the subsequent transfer of that Property from the Kagans to Momik. *See* Tr. of Dep. of Jacob Kagan, May 8, 2014, at 10-11; Tr. of Dep. of Victoria Kagan, May 8, 2014, at 10-12.[4]

Finally, insofar as their objection may be read to contest the amount of damages resulting from those fraudulent transfers, Judge Gold has given them the opportunity to submit additional evidence. His consideration of this issue is the subject of his Supplemental Report. To begin with, however, in the Supplemental Report, Judge Gold rejected, both on procedural grounds and on the merits, Jacob Kagan's effort to, in effect, reargue Judge Gold's conclusion in his Report that the Graham Avenue Property was fraudulently transferred. Judge Gold's analysis is thorough and sound, and I adopt it. I also adopt in its entirety his analysis of the relief to be awarded, and his

---

[4] Excerpted copies of the relevant pages of these transcripts are annexed to State Farm's Supplement to Motions to Commence Special Proceedings at Ex. A, Sept. 19, 2014, ECF No. 1238-1.

conclusions that: no additional judgment be entered against Jacob Kagan; that an award of $1,025,000 be awarded against Momik; and that an award of $512,500 be awarded against Victoria Kagan, who held a joint interest in the property.

## CONCLUSION

For the above-stated reasons, I adopt the Report and the Supplemental Report of Chief Magistrate Judge Gold in their entirety. The plaintiff's motions to commence special proceedings to recover fraudulently transferred property of Jacob Kagan are granted to the extent indicated, and the Clerk of Court is directed to enter judgment as follows:

Against Victoria Kagan in the sum of $83,000, representing the proceeds of checks written by Jacob Kagan to her in July of 2004;

Against Victoria Kagan in the sum of $167,557.50, representing approximately one-half of the proceeds realized from the sale of the real property at 74 Tacoma Street on Staten Island; and

Against Victoria Kagan in the sum of $512,500, in connection with the fraudulent transfer of real property located at 390 Graham Avenue in Brooklyn; and

Against Momik Realty, LLC, in the sum of $1,025,000, in connection with its role in the fraudulent transfer of the real property located at 390 Graham Avenue in Brooklyn.

SO ORDERED.

Date: December 21, 2015
Brooklyn, NY

NINA GERSHON
United States District Judge