UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------------------------------X
STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY,

                              Plaintiff,                    04-CV-2609 (NG) (SMG)

-against-

SEMION GRAFMAN, *et al*.,

                              Defendants.
---------------------------------------------------------X

**STATE FARM'S MOTION TO RECOVER FRAUDULENTLY
TRANSFERRED PROPERTY OF MOMIK REALTY, LLC FROM (I) BORIS
VOLFMAN, ESQ., (II) LAW OFFICE OF BORIS VOLFMAN, P.C., (III) HSBC BANK,
(IV) SOVEREIGN BANK, (V) YAN LYUBOMIRSKY, (VI) CASTORIA REAL ESTATE,
LLC, (VII) PHILIP O'HARA ASSOCIATES, INC., (VIII) EDWARD KORETSKY, (IX)
ELENA KAZHDAN, (X) MIRIAM KAGAN AND (XI) ALLA KORETSKY**

State Farm Mutual Automobile Insurance Company ("State Farm") requests, pursuant to Federal Rule of Civil Procedure 69 and New York Civil Practice Law and Rules § 5225, the entry of judgment against transferees of property of judgment debtor, Momik Realty, LLC ("Momik" or "Momik Realty"), including Boris Volfman, Esq., Law Office of Boris Volfman, P.C., HSBC Bank, Sovereign Bank, Yan Lyubomirsky, Castoria Real Estate, LLC, Philip O'Hara Associates, Inc., Edward Koretsky, Elena Kazhdan, Miriam Kagan and Alla Koretsky (together, the "Transferees").  In support of this request, State Farm respectfully states:

**I.     INTRODUCTION**

State Farm filed the above-captioned lawsuit in June 2004, alleging RICO, common law fraud and unjust enrichment claims.  In May 2013 the Court entered a judgment against various defendants, including an individual named Jacob Kagan ("Kagan"), for approximately $2.3 million.  Docket Entry 1172.

Momik is a New York limited liability company wholly owned by Kagan and his wife, Victoria Kagan ("Mrs. Kagan"). State Farm initiated a supplemental proceeding against Momik in April 2014 to recover property fraudulently transferred from the Kagans to Momik while the underlying lawsuit was pending. Docket Entry 1209. On December 23, 2015 the Court entered judgment against Momik for $1.025 million (the "Judgment"). Docket Entry 1259.

The primary asset of Momik in early 2010 consisted of real property located at 390 Graham Avenue, Brooklyn, New York, 11211 (the "Graham Property" or "Property"). If Momik held the Graham Property today, State Farm would be able to execute on that asset and satisfy at least part of its judgment. However, as set forth below, Momik sold the Property in April 2010 and disbursed over $1 million of proceeds (the "Graham Proceeds" or "Proceeds"). A substantial portion of the Proceeds was transferred to confidants and relatives of the Kagans. The Judgment remains unsatisfied because of those transfers.

In light of the foregoing, State Farm requests the entry of judgment against the various transferees of the Graham Proceeds pursuant to New York Civil Practice Law and Rules § 5225, which applies in this matter pursuant to Federal Rule of Civil Procedure 69.

## II.  FACTUAL BACKGROUND

### A.  The History of the Graham Property and Fraudulent Transfer Judgment.

1.   State Farm initiated this lawsuit against various defendants, including Kagan, by filing a complaint in June 2004 alleging RICO, common law fraud and unjust enrichment claims. *See* Docket Entry 1. Throughout the lawsuit, Kagan proffered his ownership of the Graham Property as a basis for the Court to reject pre-judgment attachments requested by State Farm. *See* Docket Entry 966 at 2 (order by United States District Judge Gershon freezing assets).

2. Despite those assurances, however, Kagan repeatedly transferred the Property in ways favoring himself and his family, and frustrating State Farm. First, Kagan transferred title to the Property from his own name to joint ownership with Mrs. Kagan in August 2004, some one month after being served with the complaint in this case. *See* Docket Entry 1246 at 5 (report and recommendation by United States Magistrate Gold). Mrs. Kagan did not give any consideration to Kagan for this transfer. *See id.* In June 2008, after State Farm added Mrs. Kagan as a defendant to the lawsuit in an amended complaint, the Kagans transferred their interests in the Graham Property to Momik Realty. *See id.* Again, no consideration was given in exchange for the transfer. *See id.*

3. In May 2013 the Court entered a judgment against Kagan for approximately $2.3 million in the underlying lawsuit. Docket Entry 1172.

4. State Farm subsequently initiated a post-judgment collection action against Mrs. Kagan and Momik for their roles in the fraudulent transfers of the Graham Property. *See* Docket Entry 1209. On December 23, 2015 the Court entered the Judgment in favor of State Farm and against Momik for $1.025 million. Docket Entry 1259.

**B.     Transfers of Graham Property Proceeds.**

5. Momik owned the Graham Property in early 2010. Beginning in March 2010, Momik orchestrated a series of transfers to sell the Property to a third party, Goodman Music Realty, LLC (together with its principals, "Goodman"), and convey the Graham Proceeds beyond the reach of State Farm. As a result of those efforts, the Graham Proceeds were distributed as follows:

- On or about March 24, 2010, Boris Volfman, Esq. and/or the Law Office of Boris Volfman, P.C. (together, "Volfman"), an attorney affiliated with the Kagans, received $102,500, or ten percent of the eventual sale price of the Property, via a cashier's check from Goodman.

- On or about April 15, 2010 Volfman received $290,730 via a second cashier's check from Goodman.

- On or about April 15, 2010 Momik transferred $197,500 to HSBC Bank and/or one of its affiliates (together, "HSBC Bank").

- On or about April 15, 2010 Raphael & Marks ("RM"), a law firm that upon information and belief is affiliated with Goodman, transferred $181,306.46 from its trust account to Sovereign Bank and/or one of its affiliates (together, "Sovereign Bank").

- On or about April 15, 2010 RM transferred $50,000 from its trust account to Yan Lyubomirsky, an individual affiliated with the Kagans.

- On or about April 15, 2010 RM transferred $50,000 from its trust account to Castoria Real Estate, LLC.

- On or about April 15, 2010 RM transferred $47,621 from its trust account to Philip O'Hara Associates, Inc., consisting of two payments for $39,710 and $7,911.

- On or about April 15, 2010 RM transferred $20,000 from its trust account to Edward Koretsky, an individual affiliated with the Kagans.

- On or about April 15, 2010 RM transferred $17,000 from its trust account to Elena Kazhdan, an individual affiliated with the Kagans.

- On or about April 15, 2010 $6,000 of the Graham Proceeds was transferred to Miriam Kagan, the daughter of Jacob and Victoria Kagan.

- On or about April 19, 2010 RM transferred $2,600 from its trust account to Volfman.

6. As a result of the foregoing transfers, Volfman received $395,830 of the Graham Proceeds during March and April 2010. Volfman further disbursed those proceeds as follows:

- On or about April 15, 2010 Volfman transferred $102,500 to HSBC Bank.

- On or about April 15, 2010 Volfman transferred $3,900 to Boris Volfman, Esq.

- On or about April 28, 2010 Volfman transferred $200,000 to HSBC Bank.

- On or about May 10, 2010 Volfman transferred $2,900 to Edward Koretsky.

- On or about May 10, 2010 Volfman transferred $2,000 to Alla Koretsky, an individual associated with the Kagans.

Copies of checks and other documents demonstrating many of the foregoing transfers are on file with the Court at Docket Entry 945, which is currently under seal.[1]

7. In light of the foregoing, approximately <u>one million dollars</u> in Graham Proceeds was disbursed away from Momik, and beyond the reach of State Farm. As a direct result of the foregoing transfers, the Graham Proceeds are not available to satisfy the Judgment.

8. Upon information and belief, the Transferees did not provide consideration to Momik in exchange for the foregoing transfers.

### III. ARGUMENT

#### A. Federal Rule of Civil Procedure 69 Applies New York Fraudulent Transfer Law in This Proceeding.

Rule 69 of the Federal Rules of Civil Procedure provides in relevant part, "The procedure on execution—and in proceedings supplementary to and in aid of judgment or execution—must accord with the procedure of the state where the court is located, but a federal statute governs to the extent it applies." Fed. R. Civ. P. 69(a)(1). State Farm may therefore employ the procedures of the State of New York to execute on the Judgment. *See, e.g.*, *Mitchell v. Lyons Prof'l Services, Inc.*, No. 09 Civ. 1587 (BMC), 2013 WL 4710431 (E.D.N.Y. Sep. 1, 2013) (permitting judgment creditor to employ New York execution procedures); *Aaron v. Mattikow*, 225 F.R.D. 407 (E.D.N.Y. 2004) (same).

In turn, New York Civil Practice Law and Rules ("<u>CPLR</u>") § 5225 provides:

> Upon a special proceeding commenced by the judgment creditor, against a person in possession or custody of money or other

---

[1] Portions of Docket Entry 945 have been asserted as confidential by Kagan. Assuming *arguendo* a prior confidentiality order entered into by the parties is still in effect, this motion does not implicate confidential information. Copies of applicable checks were provided to counsel for State Farm through discovery in mid-July 2010.

> personal property in which the judgment debtor has an interest, or against a person who is a transferee of money or other personal property from the judgment debtor, where it is shown that the judgment debtor is entitled to the possession of such property or that the judgment creditor's rights to the property are superior to those of the transferee, the court shall require such person to pay the money, or so much of it as is sufficient to satisfy the judgment, to the judgment creditor and, if the amount to be so paid is insufficient to satisfy the judgment, to deliver any other personal property, or so much of it as is of sufficient value to satisfy the judgment, to a designated sheriff.  Costs of the proceeding shall not be awarded against a person who did not dispute the judgment debtor's interest or right to possession.  Notice of the proceeding shall also be served upon the judgment debtor in the same manner as a summons or by registered or certified mail, return receipt requested.  The court may permit the judgment debtor to intervene in the proceeding. The court may permit any adverse claimant to intervene in the proceeding and may determine his rights in accordance with section 5239.

CPLR § 5225(b).

The proceedings authorized under § 5225(b) may properly be brought by a judgment creditor against a transferee.  *Aaron*, 225 F.R.D. at 412 (citing *Siemens & Halske v. Gres*, 32 A.D.2d 624, 624, 299 N.Y.S.2d 908, 908 (1st Dep't 1969) (holding that a special proceeding is proper in a fraudulent conveyance case)); *Gelbard v. Esses*, 96 A.D.2d 573, 575, 465 N.Y.S.2d 264 (2nd Dep't 1983), 96 A.D.2d 573, 465 N.Y.S.2d 264, 267).  <u>As this Court has determined in entering the Judgment, a plenary action is not required to set aside a fraudulent transfer under § 5225(b)—the judgment creditor may simply proceed in the underlying case through motion practice</u>.  *See* Docket Entry 1246 at 10–11 (citing cases), Docket Entry 1258 at 8–9 (same).

Given the above, State Farm may proceed against Transferees in this Court via motion practice.  A separate proceeding or lawsuit is not required.  *See id.*

### B. Overview of New York Fraudulent Transfer Law.

New York's fraudulent transfer statute is codified at New York Debtor and Creditor Law ("<u>NYDCL</u>") article 10, § 270 *et seq.* "In determining whether a conveyance is fraudulent, '[t]he

{1812/002/00323895}                               6

touchstone is the unjust diminution of the estate of the debtor that otherwise would be available to creditors.'" *Interpool Ltd. v. Patterson*, 890 F.Supp. 259, 267 (S.D.N.Y. 1995) (quoting *In re Tesmetges*, 85 B.R. 683, 697 (Bankr. E.D.N.Y. 1988) (internal quotation omitted)). The policy underlying the statute is "to protect the rights of creditors by preventing debtors from making transfers that would hinder, defraud or delay creditors." *See Interpool*, 890 F.Supp. at 267 (quotation omitted).

Article 10 provides several tools for creditors to accomplish this end. For example, a transfer is constructively fraudulent—i.e. made with intent presumed in law—if a creditor demonstrates the transfer "was made without fair consideration and (1) the debtor was insolvent or was rendered insolvent by the transfer, NYDCL § 273, (2) the debtor was left with unreasonably small capital, *id.,* § 274, or (3) the debtor intended or believed that it would incur debts beyond its ability to pay when the debts matured. *Id.,* § 275." *In re Nirvana Restaurant, Inc.*, 337 B.R. 495, 501 (Bankr. S.D.N.Y. 2006) (citations omitted). Moreover, § 276 provides that conveyances made with actual intent to hinder, delay or defraud creditors are fraudulent. NYDCL 276. Once a conveyance has been deemed fraudulent, the creditor may, *inter alia*, have the conveyance set aside to the extent necessary to satisfy his claim. *See* NYDCL § 278.

### C. The Transfers of the Graham Proceeds are Constructively Fraudulent.

The transfers set forth *supra* are fraudulent under several provisions of the NYDCL.

First, §§ 273, 274 and 275 may be used to avoid constructive fraudulent transfers, or those with intent presumed at law. *In re Norstan Apparel Shops, Inc.*, 367 B.R. 68, 77 (Bankr. E.D.N.Y. 2007) (citations omitted). Section 273 governs conveyances by insolvent persons; § 274 governs conveyances by persons in business and § 275 governs conveyances by persons about to incur debts. *See* NYDCL §§ 273–275. Read in conjunction, the statutes provide that "[a] transfer is constructively fraudulent under the DCL if it was made without fair consideration

and (1) the debtor is insolvent or will be rendered insolvent; (2) the debtor is engaged in business and will be left with unreasonably small capital; <u>or</u> (3) the debtor intended or believed that it would incur debts beyond its ability to pay them as they mature." *Norstan*, 367 B.R. at 77 (citation omitted) (emphasis supplied). Although State Farm need only demonstrate the presence of <u>one</u> of the three preceding elements to prevail on a claim under §§ 273, 274 or 275, respectively, each of the elements is present.

First, upon information and belief, the Transferees did not provide consideration to Momik in exchange for (1) their actual receipt of Graham Proceeds and/or (2) being assigned the right to receive portions of the Graham Proceeds from Goodman and RM (together, the "<u>Transfers</u>").

Second, the Transfers left Momik insolvent. Momik was wholly owned by the Kagans and its only asset of value was the Graham Property. Following the sale of the Property and disbursement of the Proceeds, Momik had essentially no assets remaining to pay its liability on debts as they became absolute and matured, such as the Judgment. *See* NYDCL §§ 271 (defining insolvency) and 273.

Third, despite remaining an active New York limited liability company today, Momik was left with no assets, and therefore unreasonably small capital, following the Transfers. *See* NYDCL § 274.

Finally, Momik intended or believed that it would incur debts beyond its ability to pay as they matured. At the time of the Transfers, State Farm held claims against Momik for its prior, fraudulent receipt of the Graham Property from the Kagans. Momik had every reason to suspect those claims would mature into a final judgment, as eventually happened, and Momik currently has no ability to pay the Judgment. The Transfers are therefore fraudulent under NYDCL § 275.

### D. The Transfers Were Made With Actual Intent to Hinder, Delay or Defraud State Farm.

NYDCL § 276 provides that every conveyance made "with actual intent, as distinguished from intent presumed in law, to hinder, delay, or defraud either present or future creditors, is fraudulent as to both present and future creditors." NYDCL § 276. The elements of a claim under that section are "(1) the thing transferred has value out of which the creditor could have realized a portion of its claim; (2) that this thing was transferred or disposed of by debtor; and (3) that the transfer was done with actual intent to defraud." *In re Flutie New York Corp.*, 310 B.R. 31, 56 (Bankr. S.D.N.Y. 2004) (citation omitted).

Again, each element is present. The Graham Proceeds have value out of which State Farm could have satisfied the Judgment. Momik either (1) directly transferred the Graham Proceeds to third parties, or (2) transferred its right to receive the Proceeds to third parties, resulting in such parties receiving the Proceeds from Goodman or RM. Finally, Momik made the Transfers with the actual intent to hinder, delay or defraud State Farm. The presence of this last element is demonstrated by *inter alia* (1) Momik receiving no consideration in exchange for the transfers, (2) the close relationship between Momik and many of the Transferees, such as attorneys and individuals affiliated with the Kagans and (3) the existence of a pattern of evasion after State Farm initiated the lawsuit in 2004, including the Kagans fraudulently conveying the Property to Momik in 2008. As Judge Gershon noted when freezing assets in September 2010, "Judge Gold found, and the record clearly supports, that defendant Kagan [i.e. a principal of Momik] has a long history of suspicious financial dealings which are intended to frustrate the collection of a judgment by State Farm." Docket Entry 966 at 3.

Finally, NYDCL § 276–a provides for attorneys' fees in an action or special proceeding under § 276 when a conveyance is found to have been made by the debtor and received by the

{1812/002/00323895}  9

transferee with actual fraudulent intent. *See* NYDCL § 276–a. State Farm respectfully requests an award of attorneys' fees with respect to transfers in which Momik and the Transferees both acted to hinder, delay or defraud creditors.

### E. Procedural Considerations.

State Farm has identified and must provide notice to over a dozen transferees, as well as Momik, the transferor. *See* CPLR § 5225(b). State Farm requests the entry of an order setting deadlines for State Farm to accomplish such service and for parties to respond to this motion. Upon the expiration of such deadlines, State Farm requests the ability to take discovery and schedule further proceedings if any material facts are in dispute.

## IV. CONCLUSION

State Farm may employ procedures of the State of New York to execute on the Judgment, including the special proceedings set forth in C.P.L.R. § 5225(b), and has demonstrated that the conveyances referenced *supra* are fraudulent under article 10 of the NYDCL.

Accordingly, the Court should enter an order:

(a) Setting forth deadlines by which State Farm may serve the Transferees, the Transferees may respond to the motion and State Farm may file reply briefs;

(b) Scheduling further proceedings if material facts are in dispute;

(c) Requiring each transferee to pay damages to State Farm in an amount up to the amount of Graham Proceeds received by that transferee, without prejudice to State Farm seeking the payment of additional monies if circumstances so require;

(d) Awarding State Farm attorneys' fees under NYDCL § 276–a and costs; and

(e) Granting State Farm such other relief as the Court deems just and proper.

## **CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that on March 23, 2016 I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system that will send a notice of electronic filing to all counsel of record.

Respectfully submitted,

**SHRAIBERG, FERRARA & LANDAU, P.A.**
Attorneys for State Farm Mutual Automobile Insurance Company
2385 NW Executive Center Drive, Suite 300
Boca Raton, Florida 33431
Telephone: 561-443-0800
Facsimile: 561-998-0047

By: /s/ Philip J. Landau
   Philip J. Landau (PL 9613)
   plandau@sfl-pa.com