UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------------------------------X
STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY,

                          Plaintiff,                        04-CV-2609 (NG) (SMG)

-against-

SEMION GRAFMAN, *et al*.,

                          Defendants.
---------------------------------------------------------X

**REPLY IN SUPPORT OF MOTION TO RECOVER FRAUDULENTLY
TRANSFERRED PROPERTY OF MOMIK REALTY, LLC**

State Farm Mutual Automobile Insurance Company ("State Farm") files this reply brief in support of its motion to recover fraudulently transferred property of Momik Realty, LLC from HSBC Mortgage Corporation (USA) (the "Motion"). Docket Entry 1263. In support of its reply State Farm states:

**I.     INTRODUCTION**

State Farm is a judgment creditor of Momik Realty, LLC, a New York limited liability company ("Momik"). In March and April 2010 Momik sold valuable real estate located in Brooklyn and disbursed over $1 million in proceeds to various third parties, including HSBC Mortgage Corporation (USA) ("HSBC").

By its own admission HSBC received $500,000 from the sale. Although HSBC is a creditor of the principals of Momik, Jacob and Victoria Kagan (the "Kagans"), the bank is not a creditor of Momik itself and did not provide any consideration to Momik, whether direct, indirect or otherwise, in connection with its receipt of the proceeds. Simply put, Momik surrendered half a million dollars to HSBC despite not owing a dime to that entity or having a

business relationship with it. Creditors of Momik were left holding the bag as the company diverted its only known assets to third parties, and State Farm is entitled to money judgments against various transferees, including HSBC, under the fraudulent transfer laws of New York.

HSBC, which holds a mortgage on the Kagans' homestead, insists that it provided consideration to Momik for its receipt of proceeds by reducing the Kagans' indebtedness on the mortgage. That statement is incorrect. Momik owned the Brooklyn property that was sold in 2010. Momik was entitled to the proceeds of that sale. Momik has never owed money to HSBC and is not an obligor under the mortgage. Second Circuit law is clear that a transfer made by a debtor (such as Momik) for the benefit of third parties is generally not "fair consideration" under a fraudulent transfer analysis, and State Farm is entitled to relief against HSBC.

## II.   FACTUAL BACKGROUND

1. For purposes of brevity State Farm incorporates the facts alleged in the Motion, including:

- Jacob Kagan ("Kagan") is a defendant in the above-captioned lawsuit. In 2008, during the pendency of the suit, Kagan and his wife, Victoria ("Mrs. Kagan"), transferred real property located at 390 Graham Avenue in Brooklyn (the "Graham Property" or "Property") from themselves to Momik.

- State Farm has been a creditor of Momik since 2008 as a result of the foregoing transfer.

- In March and April 2010, Momik sold the Property to a third party, Goodman Music Realty, LLC, and conveyed the proceeds of the sale (the "Proceeds") to various persons other than State Farm.

- $500,000 of the Proceeds were conveyed to HSBC (the "HSBC Payments" or "Payments").

- In May 2013 State Farm obtained a judgment against Kagan in the underlying suit for some $2.3 million.

- State Farm subsequently initiated a post-judgment proceeding and obtained judgment against Momik for $1.025 million in December 2015.

*See* Mot. 2–5.

2. The conveyances of the Proceeds (the "Transfers") are near-textbook examples of fraudulent transfers, as Momik dissipated its only known assets and destroyed its collectability to the detriment of its primary creditor, State Farm. Through the Motion, State Farm observes that the Transfers (a) are constructively fraudulent, i.e. made with intent presumed at law, under §§ 273, 274 and 275 and (b) were made with actual intent to hinder, delay or defraud creditors under § 276. *See* Mot. 6–10.[1] Accordingly, State Farm requests the entry of money judgments against transferees of the Proceeds.

3. HSBC filed a response to the Motion on September 1, 2016 (the "Response"). Docket Entry 1300. Neither the Response nor its supporting affidavits dispute the fact that HSBC received the HSBC Payments. *See* Docket Entries 1298–1300. Moreover, HSBC does not dispute most of the elements of State Farm's claims, such that Momik was insolvent at the time of the Transfers, was left with unreasonably small capital and believed it would incur debts beyond its ability to pay. *See* Mot. 7–8. HSBC also does not allege that Momik owed a debt to it, or that the bank provided any value to Momik regarding the transactions at issue.

4. Instead, HSBC raises a single, flawed argument. Obliterating any distinction between the Kagans and Momik, HSBC asserts that it provided fair consideration by applying the Payments towards a mortgage held on the Kagans' homestead at 3 Esmac Court North in Staten Island ("Esmac Court"). *See* Resp. 7. Building on that strawman, HSBC contends (a) that State Farm cannot prevail on its constructive fraud claims, each of which requires a lack of fair consideration by the transferee as an element, (b) that State Farm cannot prevail on its actual fraud claim because transfers by a debtor that prefer one creditor over another are per se not

---

[1] Unless otherwise stated, all section cites refer to New York's Debtor and Creditor Law, article 10, § 270 *et seq.*

fraudulent and (c) HSBC is entitled to the defenses of a good faith transferee who provides value under § 278. *See* Resp. 12–19.

5. As set forth *infra* the arguments raised by HSBC do not comport with Second Circuit law, are meritless and should be disregarded.

## III. ARGUMENT

### A. HSBC Did Not Provide Fair Consideration to Momik.

Section 272 defines "fair consideration" as being given for property or an obligation:

a. When in exchange for such property or obligation, as a fair equivalent therefor, and in good faith, property is conveyed or an antecedent debt is satisfied, or

b. When such property, or obligation received in good faith to secure a present advance or antecedent debt in amount not disproportionately small as compared with the value of the property, or obligation obtained.

NYDCL § 272. "Thus, there are three elements to 'fair consideration' under the D.C.L.: first, the recipient of the debtor's property must either convey property or discharge an antecedent debt in exchange; second, the exchange must be for a fair equivalent; and third, the exchange must be 'in good faith.'" *In re Sharp Intern. Corp.*, 302 B.R. 760, 779 (Bankr. E.D.N.Y. 2003) (citation omitted).

Second Circuit courts have long recognized that "fair consideration" in a fraudulent transfer context usually does not include transfers made by a debtor to benefit third parties rather than itself and, "similarly, that <u>a conveyance by a corporation for the benefit of an affiliate (should not) be regarded as given for fair consideration as to the creditors of the conveying corporations</u>." *See Rubin v. Manufacturers Hanover Trust Co.*, 661 F.2d 979, 991 (2d Cir. 1981) (discussing fair consideration in context of the federal Bankruptcy Act) (citations and quotation omitted) (emphasis supplied); *HBE Leasing Corp. v. Frank*, 48 F.3d 623, 638–39 (2d Cir. 1995) (applying *Rubin* to New York fraudulent transfer law).

Notwithstanding the above, "a debtor may sometimes receive 'fair' consideration even though the consideration given for his property or obligation goes initially to a third person." *Rubin*, 661 F.2d at 991. For example, fair consideration may exist where the third person confers an economic benefit on the debtor such that the debtor's net worth has been preserved, or in the case of "a novation, where the debtor's discharge of a third person's debt also discharges his own debt to that person." *See Rubin*, 661 F.2d at 991–92 (citations omitted). The key factor in an indirect benefit analysis is the value of the benefit received by the debtor. *See HBE*, 48 F.3d at 638–39 ("…to determine whether a debtor indirectly received fair consideration under the *Rubin* doctrine, the fact-finder must first attempt to measure the economic benefit that the debtor indirectly received from the entire transaction, and then compare that benefit to the value of the property that the debtor transferred. The mere fact that the debtor received a benefit is therefore insufficient to find fair consideration.") (citation omitted) (emphasis in original). As *Rubin* elaborates:

> In each of these situations [of indirect benefits], the net effect of the transaction on the debtor's estate is demonstrably insignificant, for he has received, albeit indirectly, either an asset or the discharge of a debt worth approximately as much as the property he has given up or the obligation he has incurred. Thus, although these "indirect benefit" cases frequently speak as though an "identity of (economic) interest" between the debtor and the third person sufficed to establish fair consideration, the decisions in fact turn on the statutory purpose of conserving the debtor's estate for the benefit of creditors.

661 F.2d at 992 (citations omitted) (emphasis supplied).

HSBC did not provide fair consideration to Momik under the foregoing analysis. The bank insists, without citing any authority, that the Proceeds "are in fact property of the Kagans, not Momik," "there is no distinction between the Kagans and Momik," and it provided consideration by reducing the Kagans' mortgage debt. *See* Resp. 8–13. Those statements are

{2074/001/00347146} 5

incorrect as a matter of law. State Farm is aware, and has in fact argued, that the Kagans and Momik are affiliates. *See* Mot. 8 ("Momik was wholly owned by the Kagans"). However, Momik is a still separate entity under New York law, with its own assets and liabilities. *See, e.g.*, *Angelino v. Francis J. Angelino, D.D.S., P.C.*, 83 A.D.3d 1186, 1188 (3d Dep't 2011) ("…the individual defendants, the LLC and the corporation are distinct entities, not generally liable for the debts of each other. Money in the possession of the corporation is not considered money in the possession of individuals involved with that entity, or in the possession of the LLC controlled by those same individuals.") (citation omitted). Debts owed by the Kagans are distinct from those owed by Momik and vice versa. Indeed, the entire reason State Farm commenced a post-judgment proceeding against Momik was <u>because</u> it could not ignore corporate formalities and apply its judgment against Kagan to levy on assets of Momik. Given this distinction, it is inarguable that HSBC did not provide a direct benefit to Momik by reducing debts owed by the Kagans.

Moreover, HSBC did not provide an indirect benefit under the *Rubin* test. Case law is clear that while indirect benefits do sometimes exist, the economic benefit received by the debtor must be comparable to the value of the property transferred. *See HBE*, 48 F.3d at 638–39. The test "turn[s] on the statutory purpose of conserving the debtor's estate for the benefit of creditors"—indirect benefits are not sufficient for fair consideration if the estate was diminished. *See HBE*, 48 F.3d at 638–39; *Rubin*, 661 F.2d at 992.

In this case, Momik transferred $500,000 to HSBC. The Response fails to identify <u>any</u> indirect benefit HSBC provided to Momik, such as a novation or increased access to capital, let alone a benefit that approximates half a million dollars in value. Absent such a showing, HSBC did not provide fair consideration under § 272. *See, e.g.*, *Bennett v. Rodman & English*, 2

F.Supp. 355 (E.D.N.Y. 1932) (fair consideration not present when debtor corporation paid antecedent debts of affiliates); *In re Nirvana Restaurant, Inc.*, 337 B.R. 495, 502–05 (Bankr. S.D.N.Y. 2006) (indirect benefits obtained by debtor when it signed guaranty not sufficient to provide fair consideration).

### B. The Cases Cited by HSBC are Inapplicable.

HSBC cites several opinions in which indirect value was provided in a fraudulent transfer context. *See* Resp. 8–13. However, each case is distinguishable, does not apply the *Rubin* test or does not contravene the Motion.

In *McNellis v. Raymond*, for example, a lender issued loans to a corporation. 287 F.Supp. 232, 234–35 (N.D.N.Y. 1968), *aff'd in part, rev'd in part*, 420 F.2d 51 (2d Cir. 1970). The debtor, who was the principal of the corporation, made repayments on the loans prior to filing for bankruptcy. *Id.* at 235. A bankruptcy trustee subsequently sued the lender, alleging the loan repayments were fraudulent transfers made for the benefit of the third party corporation. *Id.* The court found that the lender provided fair consideration, however, because (a) the loans were originally deposited into the bank account of the principal, which gave rise to an antecedent indebtedness on his behalf (as well as that of the corporation), and (b) the principal had utilized the loans on his own behalf to *inter alia* postpone his bankruptcy filing. 287 F.Supp. at 239 (citations omitted). By contrast, nothing in the record suggests that funds advanced from HSBC to the Kagans were ever deposited into a Momik account or utilized by Momik.

Similarly, in *Finkel v. EA Technologies, Inc.*, a law firm provided services to an affiliated corporation, LLC and individual (together, the "EA Debtors"). No. 11–cv–5662 (KAM)(JO), 2014 WL 4364757, at *1 (E.D.N.Y. Sep. 3, 2014). The LLC sold an apartment and disbursed the sale proceeds to the firm, in payment for legal services provided to each of the EA Debtors. *Id.* at *4. A creditor of the LLC sued the law firm for receiving a fraudulent transfer, under the

theory that fair consideration was only present for legal services provided to the apartment-owning LLC, and not for the remaining EA Debtors. *Id.* at *11.

With little elaboration, *Finkel* construes the transfer as a permissible one in which the principal preferred to repay his debts for legal fees over his debt to the plaintiff creditor. *See* 2014 WL 4364757, at *12. However, this conclusion disregards the corporate separateness of the EA Debtors—the apartment and proceeds at issue belonged to the LLC, but the transfer was made for the benefit of all of the EA Debtors. Under *Rubin*—which was not cited in *Finkel* at all—the court should have examined what indirect benefits, if any, the LLC received for paying debts of its corporation and principal affiliates. *See HBE*, 48 F.3d at 638–39 ("…to determine whether a debtor indirectly received fair consideration under the *Rubin* doctrine, the fact-finder must first attempt to measure the economic benefit that the debtor indirectly received from the entire transaction, and then compare that benefit to the value of the property that the debtor transferred. The mere fact that the debtor received a benefit is therefore insufficient to find fair consideration.") (citation omitted) (emphasis in original). *Contra Rubin*, the *Finkel* court did not perform that analysis, and State Farm respectfully disagrees with the decision reached in that case.

Finally, in *U.S. Bancorp Equip. Fin., Inc. v. Rubashkin*, an individual debtor executed a guaranty and mortgage in connection with his wholly-owned corporation borrowing money from a third party lender. 98 A.D.3d 1057 (2d Dep't 2012). A judgment creditor voided the mortgage as a fraudulent transfer; however, on appeal, a New York court determined that the creditor "failed to establish, by clear and convincing evidence, that the subject mortgage…was conveyed without fair consideration." *Id.* at 770.

{2074/001/00347146}                                8

Nothing in *Rubashkin* undercuts the Motion. State Farm acknowledges that fair consideration can take the form of indirect benefits in limited circumstances. In *Rubashkin*, the debtor executed a guaranty and mortgage in order for his wholly-owned corporation to receive a large loan. The debtor may have received indirect economic benefits via increased capital and synergy with his corporation that were commensurate with cost of his executing a guaranty and mortgage in that case. *See Nirvana*, 337 B.R. at 502 ("Indirect benefits may include consideration flowing from the debtor to the guarantor, synergy, increased access to capital, safeguarding a source of supply and protecting customer relationships.") (citation omitted). By contrast, HSBC does not point to any indirect benefits received by Momik in connection with the Payments. Momik has never had a business relationship with HSBC, and gained nothing by transferring its only significant capital to that entity.

### C. HSBC Has No Defense to the Fraudulent Transfer Claims.

HSBC has staked its entire defense on the fair consideration issue. *See* Resp. 8–18. Because fair consideration was not provided in connection with the Payments, HSBC has not raised a valid objection to the Motion.

Specifically, the constructive fraud claims alleged under §§ 273, 274 and 275 require State Farm to demonstrate a transfer "was made without fair consideration and (1) the debtor is insolvent or will be rendered insolvent; (2) the debtor is engaged in business and will be left with unreasonably small capital; or (3) the debtor intended or believed that it would incur debts beyond its ability to pay them as they mature." *In re Norstan Apparel Shops, Inc.*, 367 B.R. 68, 77 (Bankr. E.D.N.Y. 2007) (citation omitted). HSBC has disputed only the fair consideration issue with respect to those claims. *See* Resp. 8–13. Because fair consideration was not provided, State Farm is entitled to relief under §§ 273, 274 and 275.

Similarly, with respect to the actual fraudulent transfer claim under § 276, HSBC alleges only "that a debtor's intent to prefer one creditor over another does not constitute the intent to defraud that is necessary for an actual fraudulent conveyance claim." *See* Resp. 14–15 (citations omitted). As set forth *supra*, however, HSBC is not a creditor of Momik. The obligors under the mortgage are the Kagans. Momik did not prefer one creditor over another when it made the Payments because it did not owe a debt to HSBC. *State St. Bank* and its progeny do not apply to this case, and HSBC's arguments to the contrary are inaccurate. *See Sharp Int'l Corp. v. State St. Bank & Trust Co. (In re Sharp Int'l Corp.)*, 403 F.3d 43, 54–55 (2d Cir. 2005) ("Here, the [alleged fraudulent transfer] was on account of an antecedent debt…") (emphasis supplied).[2]

Finally, HSBC claims that it is entitled to the protections of § 278. *See* Resp. 15–18. That section limits fraudulent transfer liability for good faith transferees by (1) precluding relief against a good faith transferee who provides fair consideration and (2) permitting a good faith transferee who provides less than fair consideration to "retain the property or obligation [transferred] as security for repayment." *See* § 278. Again, however, irrespective of the faith of HSBC at the time of the Transfers, the bank did not provide any consideration to Momik. Section 278 does not protect HSBC from liability. *See Gager v. Pittsford Dev. Corp.*, 6 Misc.2d 873, 875 (Sup. Ct. 1957) (concluding from language of § 278 that the legislature intended to require even an innocent purchaser to surrender assets to creditors, "to the extent that [the assets] exceeded the value of the consideration which [the purchaser] paid").

### D. HSBC Has Recourse Against the Kagans.

Although State Farm is entitled to judgment against HSBC in any event, it is worth noting that HSBC has recourse against the Kagans for the fraudulent transfers at issue.

---

[2] HSBC also objects to an award of attorneys' fees against it under § 276–a, which provides for attorneys' fees against parties who engage in fraudulent transfers with actual intent to defraud creditors. *See* Resp. 19. To avoid confusion, State Farm is not requesting fees against HSBC under § 276–a.

In particular, the loan documents between HSBC and the Kagans provide in part that if "someone…begins a legal proceeding that may significantly affect Lender's interest in [Esmac Court] or rights under this Security Instrument…[the actions of HSBC may include] appearing in court; and…paying reasonable attorneys' fees to protect its interest in [Esmac Court]."  *See* Docket Entry 1298-1 at p. 35.  In such an event, the Kagans pledged to pay HSBC any amounts incurred by the bank, which debts are secured by Esmac Court.  *See id.*

Given this language, the Court is free to provide State Farm the expedited relief contemplated by post-judgment proceedings without depriving HSBC of remedies against the Kagans for their role in the fraudulent transfer scheme outlined *supra*.

### IV.    CONCLUSION

The only defense HSBC has raised to the Motion is that of fair consideration.  As set forth *supra*, HSBC did not provide consideration to Momik in exchange for the Payments.  State Farm is therefore entitled to a judgment against HSBC under §§ 273, 274, 275 and 276.

Accordingly, the Court should enter an order:

(a)    Entering judgment against HSBC in the amount of the Payments;

(b)    Scheduling further proceedings if it determines material facts are in dispute; and

(c)    Granting State Farm such other relief as the Court deems just and proper.

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on September 30, 2016 I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system that will send a notice of electronic filing to all counsel of record.

        Respectfully submitted,

        **SHRAIBERG, FERRARA & LANDAU, P.A.**
        Attorneys for State Farm Mutual Automobile
        Insurance Company
        2385 NW Executive Center Drive, Suite 300
        Boca Raton, Florida 33431
        Telephone: 561-443-0800
        Facsimile: 561-998-0047

    By:   /s/ Philip J. Landau
           Philip J. Landau (PL 9613)