FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.
★ SEP 21 2017 ★
BROOKLYN OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY,

        Plaintiff,

- against -

SEMION GRAFMAN, *et al.*,

        Defendants.
-------------------------------------------------------------x

OPINION & ORDER

No. 04-cv-2609 (NG) (SMG)

GERSHON, United States District Judge:

On June 12, 2017, United States Magistrate Judge Steven M. Gold issued a report and recommendation ("R&R") addressing the application of plaintiff State Farm Mutual Automobile Insurance Company ("State Farm") to recover sums it claims were fraudulently transferred by Momik Realty, LLC ("Momik"). State Farm sought to recover proceeds from Boris Volfman, Esq. and his law office ("Volfman"), Miriam Kagan, Yan Lyubomirsky, Edward Koretsky, Alla Koretsky, and Elena Kazhdan. Volfman and Miriam Kagan were the only ones to oppose State Farm's motion. Judge Gold recommended that the motion be denied as to Volfman and Miriam Kagan, and that it be granted as to those who failed to oppose. State Farm also sought attorney's fees, which Judge Gold recommended be denied.

State Farm now objects to the R&R and argues that it is entitled to recover proceeds from Volfman and its attorneys' fees. State Farm has not objected to the R&R's conclusions as to Miriam Kagan or the unresponsive defendants. As set forth below, I adopt Judge Gold's R&R in its entirety.

1

## I. Background

The R&R describes the factual and procedural history of this case in detail. Therefore, I will give only a brief overview here. On May 13, 2013, State Farm obtained a judgment against defendant Jacob Kagan ("Kagan"), among others, in the amount of $2,378,311.48. This judgment remains unsatisfied, and State Farm's current motion seeks to recover money to partly satisfy that judgment.

On December 23, 2015, a judgment was entered against Momik in the amount of $1,025,000 as the result of its role in the fraudulent transfer of real property located at 390 Graham Avenue (the "Graham Avenue property"). In April of 2010, Kagan, who with his wife owned Momik, caused Momik to sell the Graham Avenue property and disburse over $1,000,000 of the proceeds from that sale (the "Proceeds") to individuals or entities closely associated with Kagan. At issue here is the part of the Proceeds amounting to $395,830, which was deposited into Volfman's interest on lawyer account ("IOLA").

Volfman disbursed the funds from the IOLA pursuant to instructions from Kagan. With the exception noted in the footnote below, these funds were not retained by Volfman himself or his law firm, as State Farm has acknowledged.[1] See R&R at 6 n.3. Kagan has also confirmed that Volfman's disbursement of the $395,830 was pursuant to his instructions. Id. State Farm contends that Volfman should be held liable for the $395,830 that was received into and subsequently transferred from his IOLA.

---

[1] Volfman retained $3,900—$3,100 that was owed to him for accounting services and $800 as his legal fee in connection with the Graham Avenue property closing. See R&R at 9. State Farm does not argue that Volfman's services did not constitute fair consideration for this $3,900. Id.

2

## II. Discussion

A district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1). A district court must employ *de novo* review of "those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1). However, "when a party makes only conclusory or general objections, or simply reiterates the original arguments, the Court will review the [report and recommendation] strictly for clear error." *George v. Prof'l Disposables Int'l, Inc.*, 221 F. Supp. 3d 428, 433 (S.D.N.Y. 2016).

The parties dispute the proper standard of review of the R&R—*de novo* or clear error. Given that I agree with Judge Gold's analysis and recommendations, I need not decide their dispute, as, even under the stricter *de novo* review, I would reject State Farm's objections and adopt the R&R in its entirety.

### A. New York Debtor and Creditor Law

State Farm seeks relief pursuant to Federal Rule of Civil Procedure 69, which provides that the "procedure on execution—and in proceedings supplementary to and in aid of judgment or execution—must accord with the procedure of the state where the court is located." In accordance with this Rule, State Farm employs New York state procedures to execute on its judgment and set aside fraudulent transfers.

State Farm argues that the transfer of the Proceeds to Volfman was a fraudulent transfer and that, pursuant to New York Debtor and Creditor Law ("DCL"), it may obtain a money judgment against Volfman. DCL § 278 provides that:

> 1. Where a conveyance or obligation is fraudulent as to a creditor, such creditor . . . may, as against any person except a purchaser for fair consideration without knowledge of the fraud at the time of the purchase, or one who has derived title immediately or mediately from such a purchaser,

3

> a. Have the conveyance set aside or obligation annulled to the extent necessary to satisfy his claim, or
>
> b. Disregard the conveyance and attach or levy execution upon the property conveyed.

As the R&R notes, Volfman does not challenge State Farm's right, generally, to recover Proceeds fraudulently transferred by Momik. Rather, Volfman contends that he is not a transferee from whom State Farm can seek recovery.

### B. R&R's Conclusion as to Volfman

The R&R concludes that the $395,830 was "never conveyed to Volfman or his law office, and neither Volfman nor his office was a transferee of those proceeds." R&R at 6. Rather, the $395,830 was put in Volfman's IOLA, and an "attorney may not exercise dominion or control over funds deposited into his [IOLA] . . . the New York Rules of Professional Conduct provide that an attorney holds such funds as a fiduciary and may not commingle them with his own . . . Put simply, the Graham Avenue proceeds belonged to Momik, or, as a practical matter, to Kagan; they were never the property of Volfman or his law firm." *Id.* In short, because Volfman never had dominion or control over the Proceeds, he was not a transferee and, thus, recovery from Volfman is improper.

In reaching this conclusion, the R&R relied on analogous circumstances in the context of the federal Bankruptcy Code where the Second Circuit adopts the "mere conduit" test. *See In re Finley, Kumble, Wagner, Heine, Underberg, Manley, Myerson & Casey*, 130 F.3d 52, 57-58 (2d Cir.1997). Pursuant to this test, "a commercial entity that, in the ordinary course of its business, acts as a mere conduit for funds and performs that role consistent with its contractual undertaking in respect of the challenged transaction, is not an initial transferee." *Id.* at 59. Rather, to be an initial transferee from whom assets can be recovered, an entity must have dominion and control over the assets and "the right to put the money to one's own purposes." *Id.* at 57. Otherwise,

4

"every courier, every bank and every escrow agent" would be deemed an initial transferee from whom recovery could be sought. *Id.* at 56.

If subject to the mere conduit test, Volfman would not be a transferee because he did not have dominion and control over the funds in the IOLA. Rather, the assets in the account still belonged to Kagan and were subject to Kagan's instructions. Volfman was only a fiduciary who was not permitted to commingle those assets with his own or use them for personal purposes. *See* New York Rule of Professional Conduct 1.15 ("A lawyer in possession of any funds or other property belonging to another person, where such possession is incident to his or her practice of law, is a fiduciary, and must not misappropriate such funds or property or commingle such funds or property with his or her own.") In this scenario, Volfman was akin to a "law firm [not being an] initial transferee where it held funds in [a] trust account for a client." *In re Finley*, 130 F.3d at 58 (citing *Matter of Coutee*, 984 F.2d 138, 140-41 (5th Cir. 1993)).

C. **State Farm's Objections as to Volfman**

State Farm argues that the R&R incorrectly conflated federal bankruptcy law with the New York state law that governs this proceeding. Pl. Mem. at 10. However, the R&R acknowledges that "[t]his case . . . is governed by New York law." R&R at 8. Rather than conflating principles, Judge Gold drew on "analogous circumstances" in the context of bankruptcy law. *Id.* at 6. In any event, State Farm contends that the R&R improperly incorporated the mere conduit test into New York law in that DCL § 278 states that a creditor can have a fraudulent conveyance set aside "as against *any person* except a purchaser for fair consideration without knowledge of the fraud at the time of the purchase." DCL § 278 (emphasis added). According to State Farm, the only recognized exception is a purchaser who gives fair consideration; therefore, the additional

5

exception of a "mere conduit" who does not have dominion or control over the assets is not envisioned by New York law.

I reject State Farm's argument. First, New York state courts have held that "dominion or control . . . is necessary to state a claim under a fraudulent transfer theory." *Estate of Shefner v. De La Beraudiere*, 5 N.Y.S.3d 100, 101 (1st Dept. 2015). *See also Federal Deposit Ins. Corp. v. Porco*, 75 N.Y.2d 840, 842 (1990) ("the statute still cannot fairly be read as creating a remedy against nontransferees who, like defendants here, are not alleged to have dominion or control over those assets or to have benefitted in any way from the conveyance."); *Cahen-Vorburger v. Vorburger*, 41 A.D.3d 281, 282 (1st Dept. 2007) ("there is no fraudulent conveyance claim against non-transferees who merely assist in transferring assets.").

State Farm is correct that in none of these cases were the people from whom recovery was sought mere conduits. Rather, the assets never passed through them at all. For example, in *Porco*, defendants were two officials in a bank who helped the bank's director transfer money to an account in Switzerland. These two officials provided assistance to the director, but the money never passed through the two officials' hands in any way. Nonetheless, the New York courts did not rest on a finding that the assets did not pass through their hands. The test was whether they exercised dominion and control. Since they did not, they were not transferees. As the R&R correctly concludes, Volfman did not exert dominion and control and is, therefore, not a statutory transferee.

Second, as *In re Finley* noted, without this exception, anyone who happens to touch the assets is a transferee—including "every courier, every bank and every escrow agent." *In re Finley*,

130 F.3d at 56. Therefore, Second Circuit law in the bankruptcy context supports the recognition of the mere conduit analysis here.[2]

In support of its argument, State Farm relies on the language of DCL § 278, which allows for recovery against <u>any person</u>, except a purchaser for fair consideration. State Farm argues that this broad language does not support the mere conduit exception. What this argument overlooks is that DCL § 278 applies to "any person" to whom there has been a "conveyance." The term conveyance is defined as including "every payment of money, assignment, release, <u>transfer</u>, lease, mortgage or pledge of tangible or intangible property." DCL § 270 (emphasis added). Therefore, though DCL § 278 contemplates recovery from any person to whom there has been a transfer, there was no transfer to Volfman. His lack of dominion and control over the assets removes him from the purview of DCL § 278.

State Farm also argues that Volfman's alleged bad faith in receiving the Proceeds changes this analysis, but it does not. According to State Farm, Volfman's bad faith is relevant because the mere conduit defense is only available to a "commercial entity that, <u>in the ordinary course of its business</u>, acts as a mere conduit for funds and performs that role consistent with its contractual undertaking in respect of the challenged transaction." Pl. Mem. at 15-16 (quoting *Finley*, 130 F.3d

---

[2] State Farm argues that the application of the mere conduit defense to the DCL has been rejected by two courts in the Southern District of New York. *See Lyman Commerce Solutions, Inc. v. Lung*, 2015 WL 1808693 (S.D.N.Y. Apr. 20, 2015); *Cadle Co. v. Newhouse*, 2002 WL 1888716, at *6 n.6 (S.D.N.Y. Aug. 16, 2002). However, in both of these cases, the transferees had dominion and control over the assets at issue. In *Lyman*, "[e]ach of these transfers was made . . . to accounts in New York held by . . . defendants." *Lyman*, 2015 WL 1808693, at *3. The defendants argued that the only reason this money was transferred to them was so that they could then transfer it to someone else. However, the money was in defendants' accounts and there is no indication in the *Lyman* opinion that the defendants did not have dominion and control over those assets while they were in their accounts. Similarly, in *Cadle Co.*, the transferee at issue had a check written to him, he deposited the funds into his own account, and those funds remained in his account for several weeks. Again, the transferee in *Cadle Co.* had dominion and control over the assets.

at 58-59 (emphasis added)). Pursuant to this requirement, State Farm argues, "Volfman has made no showing that its ordinary course of business involves, *inter alia*, transferring hundreds of thousands of dollars through IOLA on behalf of defendants in pending RICO lawsuits." *Id.* State Farm draws this ordinary course of business requirement too narrowly. As Volfman argues, "there is nothing inherently unordinary about a real estate attorney performing a real estate closing for a client previously known to him or funds touching his IOLA account in connection with the [real estate closing]." Volfman Mem. at 23-24. It is clearly within a lawyer's ordinary course of business to maintain an IOLA to hold client funds that are subsequently disbursed from the IOLA to other entities.

Separate from its "ordinary course of business" argument, State Farm also argues that, to the extent this court relies on bankruptcy law principles, Volfman should not be permitted to avail himself of the mere conduit defense because of his bad faith. Prior to the bright-line rule established in *In re Finley*, courts were deeming conduits as transferees, but then excusing "innocent and casual" transferees from liability under principles of equity. *In re Finley*, 130 F.3d at 56. This equitable approach, however, left "every conduit vulnerable to nuisance suits and settlements," which the Second Circuit wanted to avoid. If I were to evaluate Volfman's good/bad faith, then I would be reverting to the framework that *In re Finley* expressly disavowed.[3]

For the same reason, I also deny State Farm's request to depose Volfman again in order to inquire as to his "good faith in receiving the Proceeds," "whether Volfman received the Proceeds in the ordinary course of its business," and "the extent of Volfman's relationship with the Kagans

---

[3] As the R&R noted, the Eleventh Circuit requires a mere conduit to have acted in good faith in order to avail itself of this doctrine. *See In re Harwell*, 628 F.3d 1312, 1323 (11th Cir. 2010). However, insofar as Judge Gold and I rely on analogous bankruptcy law, it is the Second Circuit decision in *In re Finley* which controls.

and Momik." State Farm Mem. at 17. Moreover, I agree with Judge Gold that State Farm has had sufficient opportunity to depose Volfman.

Lastly, I reject State Farm's request for attorneys' fees. Pursuant to DCL Section 276-a, "where such conveyance is found to have been made by the debtor and received by the transferee with actual intent . . . to hinder, delay or defraud . . . creditors, the [court] shall fix the reasonable attorney's fees of the creditor." As stated above, Volfman was not a transferee. Accordingly, I adopt the recommendation that State Farm's motion for attorneys' fees be denied.

In sum, I conclude that Volfman was not a transferee of the Proceeds because he never had dominion and control over them. Accordingly, State Farm's motion to recover the Proceeds from him is denied, as are its requests for attorneys' fees and to depose Volfman again.

### D. Defendants Who Failed to Oppose

State Farm's motion to recover funds from Yan Lyubomirsky, Edward Koretsky, Alla Koretsky, and Elena Kazhdan is granted as unopposed. The Clerk of Court is directed to enter judgment as to these individuals in the following amounts: Yan Lyubomirsky ($50,000); Edward Koretsky ($22,900); Alla Koretsky ($2,000); and Elena Kazhdan ($17,000).

### E. Miriam Kagan

State Farm does not object to the R&R's conclusion that its motion as to Miriam Kagan be denied for lack of personal jurisdiction. Therefore, State Farm's motion is denied as to her.

## III. Conclusion

The R&R is adopted in its entirety. State Farm's motion to recover funds from Volfman and Miriam Kagan is denied. State Farm's motion to recover funds from Yan Lyubomirsky, Edward Koretsky, Alla Koretsky, and Elena Kazhdan is granted as unopposed. The Clerk of Court is directed to enter judgment against these defendants in the amounts stated above. Lastly, State

Farm's motion to depose Volfman and for attorneys' fees is denied. The Clerk of Court is directed to close docket entries 1263 and 1374.

**SO ORDERED.**

/s/ *Nina Gershon*
**NINA GERSHON**
**United States District Judge**

Dated: September 21, 2017
      Brooklyn, New York